DUFRESNE, Judge.
Defendant, Curtis Tullos, was convicted by a jury of Second Degree Murder (R.S. 14:30.1) and sentenced to life imprisonment *391 without benefit of parole, probation or suspension of sentence.
From this verdict, the defendant now appeals and has assigned the following error for our review:
1. That the trial judge committed error in allowing the State to introduce selected parts of an inculpatory statement in evidence where the State failed to carry its burden of proof in showing the defendant freely and intelligently waived his right to remain silent.
In the early morning hours of June 29, 1981, Curtis Tullos, the defendant; Joseph Alexia, the victim; and Larry Knight, the state’s witness, were headed north on Interstate 55 from LaPlace to Hammond, Louisiana. Tullos was driving, Alexia was the front seat passenger and Knight was in the back seat. All three had been drinking.
Just before leaving Hammond to go to LaPlace, the ear had backfired and caught fire. The fire was put out and as the three were preparing to leave, Tullos directed Knight, who had been in the front seat, to get in the back seat. Tullos retrieved the bumper jack from the back, threw it inside the car, and since the door was broken, he climbed in through the window.
On their way back to Hammond, Alexia and Tullos got into an argument about Tullos’ little sister, who couldn’t be located at that time. As they approached the Rud-dock exit off the 1-55, Alexia told Tullos to stop the car, that he would get out and find a way home. Tullos pulled over to the side of the elevated roadway and Alexia got out and stood on the embankment next to the guard rail. Tullos slid out after him, taking the bumper jack. The two stood arguing by the side of the roadway near the rear of the car. Knight had been lying down on the back seat, but looked up to see Tullos making a motion as if to strike with the jack in his hand. Although Knight did not see the blow to Alexia, the next thing he saw was Alexia’s feet going over the bridge. Tullos then threw the jack over the side and got back in the car and drove on towards Hammond. No conversation was exchanged between Knight and Tullos. After a brief stop in Pontchatoula for gasoline, Knight fell asleep until they arrived in Brookhaven, Mississippi. It was there that they were arrested and subsequently returned to Tangipahoa Parish.
The body of Joseph Alexia was found lying in the swamp under the 1-55 on June 29, 1981 in St. John the Baptist Parish. A car’s bumper jack was found about four and a half or five feet from the body. The autopsy revealed a total of five cuts from a blunt object on the right side and the back of the head and on the chin. The skull was severely crushed; however, there were no other injuries found on the body. Later investigation revealed particles of hair, blood and flesh on the jack.
On July 1, 1981, the defendant, Curtis Tullos, made a taped statement in which he admitted striking Joseph Alexia on the head with a bumper jack after which the victim went over the side of the elevated portion of the interstate highway. On January 5, 1983, the defense moved for production and discovery of any inculpatory statements made by the defendant while in custody. In a response dated February 23, 1983, the state agreed to provide the defense with a copy of the statement; An amended answer, filed by the state on March 18, 1983, produced an earlier statement made by the defendant, while still in Brookhaven, Mississippi. On March 21, 1983, the state filed a notice of intention to use and introduce the defendant's statement of July 1, 1981, as evidence at the trial.
This notice of intention was filed the day of trial, however, Lá.C.Cr.P. Art. 768 states in pertinent part th,at “[ujnless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state’s opening statement.”
Although it is not clear exactly when the defense was served with notice of the state’s intention, pretrial discovery had *392 been granted to the defendant’s satisfaction.
The record fails to reveal that the defense ever filed a Motion to Suppress either statement made by the defendant. La.C. Cr.P. Art. 703(F), as amended by Acts 1980, No. 431, states in pertinent part that “[f]ai-lure to file a motion to suppress evidence in accordance with this article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress.”
Since this change was made relatively recently (but prior to the commission of the crime), there is no caselaw which could have given guidance on this issue. The law is, however, very specific and accordingly, it is suggested that as a result of the defendant’s failure to move to suppress the confession, there is neither statutory nor judicial justification for his objection to its admittance at trial. It follows, therefore, that the defense’s contemporaneous objection at trial was without authority and accordingly, does not preserve the issue of admissibility of the statement for appellate review. However, the issue raised by the defense in his Assignment of Error will, out of an abundance of caution, be considered here.
The defense submits in his brief two issues which should be reviewed to determine if he freely and intelligently waived his Fifth Amendment right to remain silent and his Sixth Amendment right to an attorney. The defense notes first, that the defendant was not advised of his right to an attorney at the outset of his statement and secondly, that the defendant’s request to discontinue the questioning was not honored by the interrogating officers.
The state sought to introduce the confession of July 1,1981, into evidence, but prior to doing so it was encumbant upon the prosecutor to lay a predicate for its introduction, as per La.C.Cr.P. Art. 773. More specifically, La.R.S. 15:451 states, “[bjefore what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.” The burden of proof falls to the state as per the dictates of La.C.Cr.P. Art. 703(D). State v. Thibodeaux, 414 So.2d 366 (La.1982).
In compliance with the statutorily directed procedure, the state presented the four police officers who participated in the taping of the defendant's statement to offer proof of the voluntary nature of the confession.
Detective Sergeant Oubre testified that no coercion was employed by the officers to obtain the taped statement and although he and Sergeant Rodrigue had personally explained the defendant’s rights to him, no request was made for an attorney. Sergeant Oubre did concede, however, that the officers continued their questioning of the defendant even after he stated that he did not wish to continue.
Detective Sergeant Rodrigue also testified that neither coercion nor duress was used to obtain the statement and that he had verbally advised the defendant of his rights just prior to the recording. He added that the defendant read and signed the rights form at that time. The sergeant agreed that the transcript of the taped statement did not reflect that the defendant was advised of his right to have an attorney present during the statement. Sergeant Rodrigue observed that “[i]t was just something left out.” He also testified that other questions were asked of the defendant after he had made a request to stop, but in his opinion, the defendant “wanted to talk, but he didn’t want to talk in detail of what happened.”
The state presented and marked for identification the rights of arrestee form and waiver signed by the defendant on July 1, 1981, at 2:20 p.m. Also introduced was a transcription of the taped statement given by the defendant on that same date.
After argument from both parties, the court ruled that the taped statement would be admitted into evidence. Since the issues presented by the defense questions the vol-untariness of the statement, a review of *393 the matter should begin' with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Supreme Court unequivoeably held that the state may not introduce any statements obtained from the defendant while under interrogation unless the state can prove that the following warnings were given to and understood by the defendant: “[the] right to remain silent, that any statement he does make may be used as evidence against him, and that he does have a right to a presence of an attorney, either retained or appointed.” Supra, 86 S.Ct. at 1612.
Two of the investigating officers testified that they had verbally advised the defendant of his constitutional rights just prior to the taped statement. The prepared form entitled Statement of Miranda Rights/Waiver of Rights, printed in bold face type, was signed by the defendant and witnessed by Sergeant Rodrigue. The date and time noted op the sheet is July 1, 1981, 2:20 p.m., three minutes before the start of the taped statement. Chief Johnson testified that he knew the defendant to have completed grade school and was capable of reading and understanding his rights.
State v. McNeal, 337 So.2d 178, 180 (La.1976) held that Miranda did not dictate how the accused should be advised of his rights, only that it is incumbent upon the police to make sure that he understand them and that if the defendant should opt to waive his rights, “he do so intelligently and voluntarily.”
Here the defendant had signed the waiver form acknowledging that he understood his rights. As the confession was taped and not transcribed until a later date, signature thereon was not possible. The initial questions on the tape all began with “You understand ...” and the defendant responded affirmatively. Even though the admonition as to the availability of an attorney was omitted, it did appear in the printed rights form.
State v. Jackson, 414 So.2d 310, 312 (La.1982) held that “[t]he admissibility of a confession is in the first instance a question for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the statement will not be overturned unless they are not supported by the evidence, [citations omitted],”
In the instant case, the trial court ruled that the confession was admissible into evidence. The court determined that the defendant had voluntarily signed the waiver of his Miranda rights even though there was a presumption that the warning that he had a right to an attorney may have been omitted in the initial reading of the rights. Since there was a valid waiver, the court concluded that the recorded statement was admissible. We agree. The statement was properly admitted because at its inception, the defendant freely and intelligently waived his rights.
In the second allegation made by the defense, it is suggested that the police persisted in questioning even after he asserted his right to discontinue the interrogation. On cross examination, the investigating officers conceded that their questioning of the defendant was not halted after it had been distinctly requested by him.
The Supreme Court in Miranda further admonished that:
Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, that interrogation must cease, [footnote omitted]. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Supra, 86 S.Ct. at pp. 1627-28.
The Miranda decision set forth the rule to be followed in the protection of the defendant’s rights, but did not give a clear standard to be applied. The court summarized by saying that “unless other fully effective means are adopted to notify the person of his right of silence and to assure *394 that the exercise of the right will be scrupulously honored....” the defendant must be advised of what has become to be known as the Miranda rights. Supra, 86 S.Ct. at p. 1630.
Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 326, 46 L.Ed. 313 (1975) first devised the standard by which a reviewing court could determine whether the dictates of Miranda had been followed. The court concluded “that the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his ‘right to cut off questioning’ was ‘scrupulously honored.’ [footnote omitted].”
The Louisiana courts have applied this standard with a further adaptation. State v. Shea, 421 So.2d 200, 209 (La.1982) determined that “[w]hether an accused’s rights are ‘scrupulously honored’ should depend on the particular facts of each case. Stated another way, it depends of the totality of the circumstances.”
Three recent cases have applied the “totality of the circumstances” approach in determining the admissibility of confessions.
State v. Harper, 430 So.2d 627 (La.1983) dealt with the reception into evidence of taped statements made by the defendant. Although the defendant had previously invoked his right to an attorney, he later chose to waive that right and two days later twice initiated contact with investigating officers. The court noted that “the question of whether the accused’s rights are ‘scrupulously honored’ depends on the totality of the circumstances involved in the particular facts of each case.” Supra, p. 633. Some of the factors to be considered are: who initiated further questioning, time span between invocation of right and later interrogation, disclosure of iMi-randa warnings before each interrogation, whether waiver of rights forms were signed and exertion of pressure on accused by police to exact a confession.
In State v. Germain, 433 So.2d 110 (La.1983) the court applied the holding of Miranda and of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The defendant had chosen to exercise his right to an attorney before making any statement and then later, waiving that right, initiating further conversation with the investigating officer even after repeated warnings of his rights. After reviewing the circumstances, the court found that the defendant had waived his rights under Miranda and the additional requirement of Edwards, that the accused himself initiate any further contact with the police, was also met.
In State v. Mitchell, 437 So.2d 264 (La.1983), the court noted that the trial court had properly analyzed the totality of the circumstances in the case in its determination that the defendant’s confession was freely and voluntarily given.
In the instant case, the defendant opted not to say any more about the incident on the interstate. One of the officers immediately asked for a few more questions in clarification. The defendant did agree to a few more questions.
At the point in the statement that the defendant announced that he did not wish to answer any more questions, the interrogation should have stopped. Up until this point, there was no infringement on the defendant’s rights. However, the defendant had admitted to hitting Joseph Alexia over the head with the bumper jack and throwing him over the side of the elevated interstate highway. What followed the crucial request to stop could be construed as simply a more detailed account of the events of the night in question and therefore harmless error. See State v. Gibson, 391 So.2d 421 (La.1980).
From the transcript, it would appear that the defendant did not want to discuss why he had killed Joseph Alexia. Gleaned from what was testified to by Larry Knight, the argument between Tullos and Alexia centered on Alexia’s knowledge of and behavior towards Tullos’ younger sister, Pam Broussard. When the investigating officers asked about her specifically, Tullos again refused to answer. Except for mat *395 ters directly concerning his sister, Tullos was cooperative.
From a comprehensive review of the defendant’s statement, we are of the opinion that the introduction of the admissable part of the statement was, at most, harmless error. The defendant had already confessed to the crime and that part of the statement is equally, if not more inculpatory than the latter portion. The record adequately shows that the defendant was advised of his rights and freely and voluntarily made the statement which was admitted into evidence.
This assignment is without merit. The admission of the taped statement of the defendant into evidence does not constitute reversible error.
Accordingly, the conviction and sentence of the defendant, Curtis Tullos, is affirmed.
AFFIRMED.