544 So.2d 461 (1989)
STATE of Louisiana, Appellee,
v.
Willie HOLLAND, Appellant.
No. 20,193-KA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1989.
Rehearing Denied June 1, 1989.
*463 Smith & Hingle by J. Randolph Smith, Monroe, for appellant.
Joseph T. Mickel, Asst. Dist. Atty., Monroe, for appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
Defendant, Willie Holland, indicted for second degree murder and convicted of manslaughter, appeals his conviction and 21-year hard labor sentence presenting 19 assignments of error.
This case arises out of the armed robbery and murder of Carlton Gresham, Sr., owner of Globe Furniture Company in Monroe, Louisiana. The state's theory is that defendant was a principal, LSA-R.S. 14:24,[1] with Joe Louis Wyatt in the perpetration of the armed robbery. During the robbery Wyatt shot and killed Mr. Gresham, thus committing second degree murder, LSA-R. S. 14:30.1 A(2).[2] Obviously the jury's verdict *464 of guilty of manslaughter was a compromise verdict.

FACTS
We have reviewed the facts in the light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On June 12, 1986 the defendant, who had his baby girl along, and Joe Louis Wyatt (Wyatt), met at the Pyramid Lounge (Pyramid), which is next door to Globe Furniture Company (Globe), on Desiard Street in downtown Monroe at 8:00 or 8:30 in the morning. They sat in the parking lot drinking beer. Wyatt testified that after seeing Mr. Gresham arrive at his store, Holland proposed that they rob the Globe, where defendant had previously worked. Holland could not enter the store himself because the Greshams knew him. Wyatt agreed. Holland told Wyatt that Mr. Gresham kept large sums of money in the safe, and warned Wyatt that he also kept a gun in the safe. Holland gave Wyatt a detailed description of the store, and advised him that after the robbery he should secure Gresham in a small room in the rear of the store, then place a washer in front of the door. Holland was to drive the get-away vehicle.
Holland and Wyatt left the Pyramid at about 8:45 to run various errands for Holland. During this time they continued to discuss and plan the robbery. At some time after 11:30 a.m. they returned to the Desiard Street area of the Globe and the Pyramid.
Holland let Wyatt out in the vacant lot between the Pyramid and the Globe. Holland saw Wyatt transfer the gun he was carrying in a green bag to his pants pocket. Wyatt then walked towards the Globe, and Holland went to the Dew Drop Inn, located on the same block as the Globe. Carl Gresham, the owner's son, was mowing the lawn to the side of Globe when Wyatt entered the store. Wyatt asked Mr. Gresham for the use of his phone, and then pretended he was using it. During this time Carl Gresham entered the store, got a tool, and went back out. Wyatt pulled out his gun and ordered Mr. Gresham to open the safe and give him his gun and the money. Carl Gresham estimated that Wyatt got between $500 and $600. Wyatt then ordered Mr. Gresham to a small room in the back of the store. Wyatt testified that as they were walking toward the room Mr. Gresham made a sudden movement, and Wyatt shot him. Wyatt left the store. Carl Gresham saw Wyatt again as he walked towards the Dew Drop.
When Wyatt reached the Dew Drop, Holland drove him to his house. Wyatt gave Holland $125, and told him that he had shot Mr. Gresham. Holland returned to the Dew Drop Inn and told his cousin that Wyatt "did something crazy." Holland then went to Globe, where Carl Gresham told defendant his father had been stabbed and robbed. Detective Peel, who was on the scene, testified that defendant arrived at the Globe at approximately 12:30. Holland denied knowing anything about the crime, but told the police he would find out who did it. Holland went to the Pyramid and sat in his car. When his friend Larry Baker came by defendant told him the story, and Baker advised him not to do anything. Holland then went to find Wyatt. Georgia Mae Williams, Wyatt's aunt, testified that she saw Holland looking for Wyatt twice after 11:30 or 11:45, and then saw him talking to Wyatt sometime between 12:20 and 12:35. Holland then went to the hospital to check on Mr. Gresham's condition. At 1:20 Holland visited his fiancee, Brenda Hubbard, at her school. At 1:30 Holland called the police and said he had seen a male with a white t-shirt, baggy pants and cap running down Jackson Street, and gave them a description that did not match Wyatt. He later went to the police station, and reported he had seen several black males standing in front of a bar on Jackson Street, and that the black male he had previously described had run toward Hippolite Street. At 2:00 p.m. defendant returned to the police station, said he couldn't find out any more information *465 and left. At 3:00 p.m. that day Holland told the police that "Boon" (Wyatt) had done the killing, and where Wyatt lived. Holland gave a statement to the police that night. The following day the police picked Holland up, and he turned over to them the $100 bill Wyatt had given him and was arrested. On June 16, 1986 he gave another statement to the police.
At trial defendant denied conspiring with Wyatt to rob Mr. Gresham. Holland asserted that Wyatt knew he had worked at Globe, and that Wyatt approached him for information, after having planned the robbery for a month. Holland testified that he told Wyatt not to commit the robbery, and that Wyatt had assured him he would not. Holland contended he did not know Wyatt had shot Mr. Gresham until after he had agreed to drive him home.
Defendant was indicted for second degree murder. After trial by jury he was convicted of manslaughter and sentenced to 21 years at hard labor. On May 23, 1988 defendant was tried for conspiracy to commit armed robbery and acquitted.

ASSIGNMENT NO. 1
In his first assignment of error the defendant argues the court abused its discretion in denying defendant's challenge of a juror for cause and his subsequent motion for mistrial.
On the morning of the fourth day of trial the judge received a letter from a juror, Arlon Cole. On the previous evening Cole's daughter had informed him she received a telephone call from a person who identified himself as Bill Haynes, a venireman who had been excused. The person told her his (Bill Haynes's) grandfather was related to the victim and that Haynes believed he was related to Cole. Cole reported this to the judge and testified that he did not know whether he was in fact related to Bill Haynes nor was he aware of the degree of kinship between Haynes and the victim. Cole stated that even if he were in some way related to Haynes (and thus the victim), it would not affect him or the process of his decision making, he could be fair and impartial.
Defendant challenged juror Cole for cause. The trial judge denied the challenge and stated for the record that there was nothing to make him conclude that any possible relationship would influence the juror in arriving at a verdict and denied the challenge for cause. Defendant objected to the court's ruling and moved for a mistrial, which was also denied.
LSA-C.Cr.P. art. 797(3) provides:
Art. 797. Challenge for cause
The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(3) the relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
A trial judge is granted great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed without a showing of an abuse of that discretion. State v. Jones, 474 So. 2d 919 (La.1985). Disclosure during the trial that a juror knows or is related to a witness or the victim is not sufficient to disqualify a juror unless it is shown that the relationship is sufficient to preclude the juror from arriving at a fair verdict. State v. Peterson, 446 So.2d 815 (La.App. 2d Cir. 1984). The connection must be such that one must reasonably conclude that it would influence the juror in arriving at a verdict. State v. Hodgeson, 305 So.2d 421 (La.1974).
The juror testified, and the judge found, that any possible relationship would not impair the juror's ability to be impartial. We find no abuse of the trial judge's discretion in denying the challenge for cause.
Appellant also alleges, without elaboration, the court erred in denying his subsequent motion for mistrial. Mistrial is a drastic remedy. Unless mandated by LSA-C.Cr.P. art. 770, it is committed to the sound discretion of the trial judge and is *466 warranted only if substantial prejudice results which would deprive a defendant of a fair trial. State v. Jarman, 445 So.2d 1184 (La.1984). No mandatory grounds for mistrial are presented here. It seems that appellant intended to base his motion for mistrial on LSA-C.Cr.P. art. 775(6), which provides a mistrial may be ordered when false statements of a juror on voir dire prevent a fair trial.
Disclosure during the trial that a juror is related to the victim does not necessarily prevent a fair trial. State v. Hodgeson, supra; State v. Peterson, supra. As we discussed above, we cannot find that the trial judge erred in concluding that the possible relationship, of which the juror was unaware during voir dire, would not prejudice the defendant or prevent a fair trial. This being the case, the trial judge did not err in denying defendant's motion for mistrial.
There is no merit in appellant's first assignment of error.

ASSIGNMENT NO. 2
Appellant's second assignment of error is that the court erred in failing to allow defense witness Brenda Hubbard, defendant's fiancee, to testify to statements made by defendant to her following the robbery and murder of Gresham.
The state objected to the statements, contending they were hearsay. Defendant argued they were excited utterances, part of the res gestae, or fell under the state of mind exception to the hearsay rule. The trial judge sustained the objection; defendant objected.
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. Hearsay evidence is inadmissible except under one of the statutory or well-recognized exceptions. LSA-R.S. 15:434; State v. Hatcher, 372 So.2d 1024 (La.1979); see also LSA-C.E. art. 801 C.

Excited Utterance
One of the exceptions recognized by this state is for certain statements made under the influence of a startling event. Formulations of the exception differ, but all courts agree on two basic requirements. There must be an occurrence or event sufficiently startling to render an observer's normal reflective thought processes inoperative. Additionally, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Henderson, 362 So.2d 1358 (La.1978).
Many factors enter into determining whether in fact the second requirement has been fulfilled and whether a declarant was at the time of an offered statement under the influence of an exciting event. Probably the most important of these is the time factor; the trial court must determine whether the interval between the event and the statement was long enough to permit a subsidence of emotional upset and a restoration of a reflective thought process. Several additional factors which may indicate that the statement was the result of reflective thought, but do not automatically justify exclusion, are as follows: evidence that the statement was self-serving or made in response to an inquiry; expansion of the excited utterance beyond a description of the exciting event into past facts or the future; and proof that the declarant performed tasks requiring reflective thought processes between the event and the statement. State v. Henderson, supra.
Defendant's statement to Hubbard took place about 1½ hours after the robbery and shooting. Defendant had come to visit Hubbard at school. Hubbard said this conversation took place at 1:20. By this point defendant, by his own admission, had dropped Wyatt off after the robbery and shooting, returned to the Dew Drop Inn; gone to the Globe and heard Carl Gresham's version of the crime; told the police at the Globe he had no knowledge of the crime; gone to the Pyramid and related his story to Larry Baker; gone by Wyatt's house at least three times and finally spoken with Wyatt; and visited the hospital. *467 Ten minutes after Hubbard says defendant spoke with her, defendant made a phone call to the police and gave them misleading information. Obviously, defendant performed tasks requiring reflective thought processes between the robbery and shooting and his statements to Hubbard. The statements were self-serving, and made in response to Hubbard's inquiry. All of these factors weigh in favor of a conclusion that defendant's statements were the result of reflective thought and the trial judge was not wrong in finding Hubbard's testimony did not fall under the excited utterance exception to the hearsay rule.

Res Gestae
The res gestae consists of events speaking for themselves under the immediate pressure of the occurrence, through the spontaneous words and acts of the participants. To constitute res gestae, the circumstance and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. LSA-R.S. 15:447, 448; State v. Mitchell, 437 So.2d 264 (La.1983). The res gestae doctrine includes not only spontaneous utterances made before and after the commission of a crime, but also the testimony of witnesses pertaining to what they heard or observed before, during or after the commission of the crime, if the continuous chain of events is evident under the circumstances. Those things forming part of the res gestae of an offense are always admissible. State v. Burns, 504 So.2d 124 (La. App. 2d Cir.1987), writ denied 505 So.2d 1142 (La.1987).
The statements to defendant's fiancee did not form a continuous transaction with the robbery and murder. As we reviewed above, defendant had encountered the victim's son, denied any knowledge of the robbery and shooting to the police, recounted the story to a friend, searched for and spoken with Wyatt, and visited the hospital, all before making the statement. Since there was no continuous chain of events between the crime and the statement, the conversation is not a necessary incident or immediate concomitant of the crime. Hubbard's testimony was not admissible under the res gestae exception.

State of Mind
Defendant's final argument in this assignment of error is that Holland's statements were not hearsay because they were not introduced to show the truth of the matter asserted, but rather to show his state of mind.
State of mind evidence is a recognized exception to the hearsay rule. State v. Edwards, 420 So.2d 663 (La.1982). An out of court statement may be offered to show the speaker's state of mind, whether directly or indirectly. However, a state of mind evidenced by a speaker's remarks cannot be used to prove the speaker's past conduct, only the speaker's subsequent conduct. State v. Martin, 458 So.2d 454 (La.1984). Hubbard's account of defendant's statements to her would plainly be intended to show his past conduct. It is therefore not admissible under this exception.
We find no error in the trial judge's ruling that Hubbard's testimony was not admissible.

ASSIGNMENT NO. 3
In his third assignment of error appellant argues the trial court erred in admitting state exhibits S-27, S-27a and S-28. These are the waiver signed by defendant, the tape of his statement and the transcript of the recorded statement he gave on June 16, 1986. Defendant urges two arguments. First, the state failed to introduce evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement as required by C.Cr.P. art. 703 G. Second, the state did not bear its burden of establishing beyond a reasonable doubt that the recorded statement given by defendant was free and voluntary, as required by LSA-R.S. 15:451.
Art. 703 G, by its own terms, is applicable only "When a ruling on a motion *468 to suppress a confession or statement is adverse to the defendant." This record contains no motion to suppress defendant's recorded statements prior to trial. Art. 703 F provides that the failure to file a motion to suppress evidence prevents the defendant from objecting to its admissibility at the trial on a ground assertable by a motion to suppress. State v. Myers, 495 So.2d 411 (La.App. 3d Cir.1986); State v. Tullos, 446 So.2d 390 (La.App. 5th Cir. 1984). Defendant's failure to file a motion to suppress precludes him from relying on Art. 703 on appeal. Nevertheless, we note that the state did introduce evidence of the circumstances surrounding the taking of the statement.
Considering defendant's second argument, the record clearly shows that the defendant made the June 16, 1986 recorded statement freely and voluntarily. For a confession to be admitted into evidence it must be shown that it was free and voluntary and not made under the influence of fear, duress, intimidation, menace, threats, inducements, or promises. LSA-R.S. 15:451. The state has the burden of proving this beyond a reasonable doubt. State v. Neslo, 433 So.2d 73 (La.1983). The conclusions of a trial court on the credibility and weight of testimony relating to the voluntariness of a confession are given great weight and will not be disturbed when supported by the evidence. State v. Neslo, supra. Detectives Peel and Casey testified that prior to defendant giving his statement, they read defendant his Miranda rights, that they explained each of his rights on the waiver form, that defendant indicated he understood his rights, and that defendant initialed and signed each of the rights enumerated on the waiver. The detectives testified that defendant was not threatened in any way nor were any promises made to him in return for his statement. Defendant admitted at trial that Detectives Peel and Casey had not harassed him on June 16, and had in fact been nice to him. The state carried its burden of affirmatively showing that defendant's confession was made freely and voluntarily and not made under the influence of fear, duress, intimidation, menaces, threat, inducements or promises.
The admissibility of the waiver and the transcript depend on the admissibility of the recorded statement. The trial judge did not err in admitting exhibits S-27, S-27a and S-28; this assignment of error has no merit.

ASSIGNMENT NO. 4
Appellant argues in this assignment of error that the trial judge erred in allowing exhibits S-12 to S-16 to be introduced into evidence. The exhibits complained of are photographs of Mr. Gresham taken after the shooting, and depicting the bullet wounds. Defendant alleges on appeal that the probative value of these photographs is outweighed by their gruesome and inflammatory nature, particularly in light of the defendant's stipulation to Mr. Gresham's death and the manner in which it occurred.
In general, photographs which illustrate any fact, shed any light upon any fact or issue in the case, or are relevant to describe the person, thing or place depicted are admissible. State v. Kirkpatrick, 443 So.2d 546 (La.1983). The test of admissibility of alleged gruesome photographs is whether their probative value outweighs the possible prejudice which may result from their display to the jury. State v. Brogdon, 426 So.2d 158 (La.1983). A stipulation to the matter sought to be proved by the photographs necessarily bears upon a balancing of the probative value versus prejudicial effect. However, the state cannot be robbed of the fair and legitimate moral force of its case merely because the stipulation is offered. State v. Lindsey, 404 So.2d 466 (La.1981), cert. denied 464 U.S. 908, 104 S.Ct. 261, 78 L.Ed.2d 246 (1983).
The photographs here serve the purposes of depicting for the jury what the victim looked like following the shooting and illustrating some of the medical testimony concerning the cause of death. Generally, photographs of a victim's body which depict the fatal wounds are relevant to prove the corpus delicti, to establish the identity of the victim, the location, severity and *469 number of wounds, and to corroborate other evidence of the manner in which the death occurred. State v. Eaton, 524 So.2d 1194 (La.1988).
The photographs complained of were not included in the record on appeal, so this court ordered the record supplemented to permit our review of them. The photographs are in black and white, and not of a sort to offend or inflame anyone. They were taken in a sterile environment, and do not depict blood or other unpleasant concomitants of violent death.
The trial court has considerable discretion in admitting photographs and its ruling will not be disturbed on appeal in the absence of an abuse of that discretion. State v. Kelly, 362 So.2d 1071 (La.1978), cert. denied 439 U.S. 1118, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979). Our review has convinced us there was no such abuse in this case.
We find no merit in this assignment of error.

ASSIGNMENTS NO. 57
In these assignments of error the appellant complains the trial judge erred in refusing to give defendant's requested special instructions.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. LSA-C.Cr.P. art. 807; State v. Johnson, 438 So.2d 1091 (La.1983). This charge, however, must be supported by the evidence. State v. Johnson, supra. It need not be given if it is included in the general charge or another special charge to be given. LSA-C.Cr.P. art. 807.

ASSIGNMENT NO. 5
Appellant argues the trial judge erred in failing to give the requested special charge concerning mistake of fact.
The requested charge reads as follows:
Unless there is a provision to the contrary in the definition of a crime, reasonable ignorance of fact or mistake of fact which precludes the presence of any mental element required in that crime is a defense to any prosecution for that crime.
Mistake of fact is a defense where the reasonable mistake of fact precludes the presence of any mental element required in that crime. LSA-R.S. 14:16; State v. Converse, 529 So.2d 459 (La.App. 1st Cir.1988), writ denied 533 So.2d 355 (La.1988).
Holland contends this charge is pertinent because of his testimony that he did not believe that Wyatt was going to the Globe to rob Mr. Gresham. Appellant contends that this mistake of fact would preclude the intent necessary to be adjudged a principal to the crimes. We find the trial judge did not err in failing to give the requested special charge. The general charge instructed the jury as to the requisite knowledge and intent needed for the crime, and the additional charge would have been redundant. See State v. Williams, 471 So.2d 255 (La.App. 1st Cir. 1985), writ denied 475 So.2d 1102 (La.1985).

ASSIGNMENT NO. 6
Appellant contends the trial judge erred in failing to include his requested special charge as to withdrawal from the common design. The trial judge found the requested charge not pertinent to the evidence.
The requested charge reads as follows:
If you believe from the evidence presented that defendant joined in a common design to commit an unlawful act but subsequent thereto withdrew from the common design and so informed any alleged accomplice of his said withdrawal, you must find him not guilty.
This theory of withdrawal is based on defendant's testimony that he twice told Wyatt, "don't do it," although Wyatt denied this at trial. At trial defense counsel did not advance the theory of withdrawal. Instead his efforts, and this evidence, were directed at showing that defendant had never entered into a conspiracy.
The trial judge is required to instruct the jury on any defense or phase of the case which is arguably supported by the evidence, whether or not it is accepted by him *470 as true. State v. Miller, 338 So.2d 678 (La.1976). However, the refusal to give a requested special charge does not warrant reversal of a defendant's conviction unless it prejudices substantial rights of the accused. LSA-C.Cr.P. art. 921; State v. Marse, 365 So.2d 1319 (La.1978).
While arguably defendant's testimony that he had "begged" Wyatt not to commit the robbery might have been construed as a withdrawal if believed by the jury, refusing to give the requested charge was harmless error. The evidence of withdrawal is virtually non-existent. It is presented based only on the defendant's self-serving statement, which was contradicted by Wyatt, that he counseled against a robbery which he had never agreed to commit in the first place. Further, as we have seen, the defense of withdrawal was not developed at trial. Defense counsel did not argue withdrawal to the jury. Indeed, it is inconsistent with the defense theory that Holland never entered into a conspiracy at all. The evidence that defendant now uses to support withdrawal was used at trial to bolster his contention that he never entered into a conspiracy to rob Gresham. Even if the charge should have been given, it is harmless error beyond a reasonable doubt to refuse it when there is an extreme paucity of evidence, coupled with a defense theory that not only rejects the defense (of withdrawal) but also exploits the meager evidence to support another theory. State v. Holmes, 467 So.2d 1177 (La.App. 2d Cir.1985), writ denied 470 So.2d 119 (La.1985).
There is no merit in this assignment of error.

ASSIGNMENT NO. 7
In this assignment of error defendant argues the trial judge erred in failing to charge the jury with a portion of requested charge number one submitted by the defendant.
That requested charge reads as follows:
An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state.
In the case of an armed robbery, the requisite mental state is that the defendant has the specific intent to take anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
In the case of simple robbery the requisite mental state is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.
It is not enough to find that an alleged accomplice had the necessary mental state, since this intent cannot be inferred to the accused. It must be shown, in order to convict, that this accused also had the specific intent to inflict great bodily harm or death OR had the specific intent to commit armed robbery or simple robbery.
In his charge to the jury the trial judge defined the crimes of second degree murder, armed robbery, and simple robbery. He defined general intent, specific intent, and principals, and did use the first paragraph of the charge, instructing the jury that a person could only be convicted as a principal for those crimes for which he personally has the requisite mental state. The requested special charge is substantially given and covered by the trial court's general charge, and thus was properly refused. Art. 807. There is no merit in this assignment of error.

ASSIGNMENT NO. 8
In his eighth assignment of error appellant asserts the trial judge erred in including in the charge to the jury the following explanation of intent: "It is usually proved by the sum total of acts or conduct concomitant with, or part of a transaction having as its ultimate goal the achievement of a particular end or result."
The ruling of a trial court on an objection to a portion of his charge to a jury will not be disturbed unless the disputed portion, when considered in connection with the remainder *471 of the charge, is shown to be erroneous and prejudicial. State v. Perry, 408 So.2d 1358 (La.1982).
Defendant objects to the phrase, "It is usually proved," contending that the use of this phrase infringed upon the reasonable doubt standard for conviction. The state cannot shift to the defendant the burden of disproving an element of the crime charged by use of a conclusive presumption or by shifting the burden of persuasion. State v. Jackson, 450 So.2d 621 (La.1984).
The portion of the jury charge complained of here is not erroneous. It does no more than set out a permissive inference that intent may be implied under certain circumstances, and leaves the jury free to credit or reject the inference; it does not shift the burden of proof to the defendant. See State v. Jackson, supra. The court's charge as a whole relative to intent instructed the jury that intent was an element of the crime and that each element of the crime had to be proven beyond a reasonable doubt by the state in order to find defendant guilty. Read in connection with the entire charge, this portion of the charge was not erroneous, and there is no merit in this assignment of error.

ASSIGNMENT NO. 9
In this assignment of error appellant argues that the trial court erred in denying appellant's request to amend the statement, "Intent is a question of fact which may be inferred from the circumstances," to read "Intent or lack of intent is a question ..." Appellant argues that the trial court's failure to include this amendment confused the jury as to the proper standard of reasonable doubt. For this argument the defendant relies on State v. Mack, 403 So.2d 8 (La.1981) and State v. Gibbs, 355 So.2d 1299 (La.1978). We find these cases inapplicable. In State v. Mack and State v. Gibbs the court held that a charge in which the jurors are limited to the evidence before them to support a reasonable doubt is clearly wrong. The court found it essential that defendant be given the benefit also of every reasonable doubt arising out of the lack of evidence in the case. This follows the provision of LSA-C. Cr.P. art. 804 A(2). The holdings of these cases deal with the totality of the evidence of the case as a whole, not any specific element of the crime.
An exact understanding of reasonable doubt is essential in every criminal jury trial. State v. Mack, supra. An instruction which misleads or confuses the jury as to the meaning of reasonable doubt may create an error of constitutional dimensions. State v. McDaniel, 410 So.2d 754 (La.1981).
We find, however, that the phrase "or lack of intent" would have been redundant. The trial judge instructed the jury that each element of the crime must be proven beyond a reasonable doubt to find defendant guilty, and defined reasonable doubt. He also instructed the jury, "In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence," and also, "You must determine the facts only from the evidence or lack of evidence presented," as suggested in State v. McDaniel, supra. A jury charge must be considered as a whole with specific expressions construed in context. We will not reverse when the disputed portion considered in context with the remainder of the charge is not erroneous or prejudicial. State v. Jackson, supra. Since this point was clearly covered in the charge, the trial judge did not err in rejecting the suggested amendment. Art. 807.

ASSIGNMENT NO. 10
Appellant argues the trial judge erred in instructing the jury that defendant could be convicted on the uncorroborated testimony of an alleged accomplice, and in failing to instruct the jury as to defendant's related special charge.
That portion of the charge to which defendant objects is included in the following section of the charge:
An accomplice is defined as one who is associated with another in the commission of the crime.

*472 An accomplice is a competent witness, either for the State or for the defendant, whether he has been convicted or not, or whether he has pleaded guilty, or a nolle prosequi or dismissal entered as to him, or whether he be joined in the same information or indictment with the person or persons on trial or not.
Corroboration is desirable, but not always indispensible; the jury may convict on his uncorroborated testimony, and while it is not the rule of law, it is rather the rule of our experience, in dealing with that class of testimony, that while you may convict upon the uncorroborated testimony of an accomplice, still you should act upon his testimony with great caution, subject it to a careful examination in the light of the other evidence in the case, and you are not to convict upon such testimony alone, unless satisfied, after a careful examination of its truth, and also that you can safely rely on it.
The appellant is incorrect in his assertion that a defendant cannot be convicted on the uncorroborated testimony of an alleged accomplice. In State v. May, 339 So.2d 764 (La.1976), the Louisiana Supreme Court recognized that as a general principle of law, a conviction can be sustained on the uncorroborated testimony of a purported accomplice, although the jury should be instructed to treat such testimony with great caution. The general charge to which appellant objects is identical with the general charge that the Louisiana Supreme Court approved of in State v. Hamilton, 312 So.2d 656 (La.1975). There is no merit in the first portion of appellant's assignment of error, that the charge given was erroneous.
We also find the trial judge did not err in refusing defendant's requested special charge which reads as follows:
Testimony of an alleged accomplice should be treated with great caution. In order for you to convict Willie Holland based on testimony of an alleged accomplice, the testimony of the alleged accomplice must be materially supported by other evidence which connects Willie Holland to the crime.
Corroboration of an alleged accomplice's testimony must extend to every material fact necessary to establish the crime. This supporting testimony must come from a believable and unimpeached source.
A requested special charge need not be given unless it is wholly correct and pertinent. LSA-C.Cr.P. art. 807; State v. Lewis, 236 La. 473, 108 So.2d 93 (1959). Defendant's requested special charge, asserting that an accomplice's testimony must be corroborated, is, as we have seen, not a correct statement of the law. State v. May, supra; State v. Hamilton, supra.
There is no merit in appellant's tenth assignment of error.

ASSIGNMENT NO. 11
Defendant asserts the trial judge erred in allowing the prosecution to ask some potential jurors their views regarding capital punishment. The state's star witness, Wyatt, was indicted for first degree murder and faced the death penalty until he plea bargained, and agreed to plead guilty as charged and testify in defendant's trial in return for a life sentence. The record reveals that four members of the jury were asked some variation of the question
This gunman was initially charged with first degree murder. He had an agreement with the State that he would not go to trial, in exchange for that the State would not seek the death penalty. No other strings attached. He is now doing life. I can't give him double life. I can't give the death penalty any more. I can't compel his testimony. I want to ask each of you briefly, how do you feel about the death penalty? Is itdo you feel that it's a necessary law or are you against it?
Defense counsel objected to the line of inquiry. The objection was overruled. Defendant argues this conduct was unconstitutional because it resulted in a jury more prone to convict, deprived him of a jury comprised of a representative cross-section *473 of the community, and compelled him to exercise one or more peremptory challenges he would not have otherwise exercised in an attempt to rid the jury of individuals who in theory may be more prone to convict. The state contends that the purpose of this voir dire was to test the competency and impartiality of the prospective jurors on their views towards the witness Wyatt. If they believed Wyatt should have been put to death it may have affected their attitude toward Wyatt as a witness in this case. The questions asked in this area had some relevance.
Counsel should be given wide latitude in their voir dire examinations. State v. Hunter, 340 So.2d 226 (La.1976). The scope of voir dire examination is within the sound discretion of the trial judge and his rulings will not be disturbed on appeal in the absence of a clear abuse of discretion. LSA-C.Cr.P. art. 786. A review of the trial judge's rulings should be undertaken only on the record of the voir dire examination as a whole. State v. Williams, 457 So.2d 610 (La.1984).
To date the jurisprudence has not accepted the theory that a "death qualified" jury is more likely to convict. State v. James, 431 So.2d 399 (La.1983), cert. denied 464 U.S. 908, 104 S.Ct. 263, 78 L.Ed.2d 247 (1983); State v. David, 425 So.2d 1241 (La. 1983), appeal after remand 468 So.2d 1126 (La.1985), cert. denied, 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986). The defendant has offered no evidence, statistics, or studies to support such a theory. The courts have rejected the theory that "death qualified" juries are not a representative cross section of the community. Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); State v. Prestridge, 507 So.2d 1271 (La.App. 3d Cir. 1987), writ denied 512 So.2d 439 (La.1987). Defendant has made no attempt to establish that the actual jury impanelled was a death qualified jury and that it did not constitute a representative cross-section of the entire community. Mere speculation does not warrant reversal of defendant's conviction. State v. James, supra; State v. David, supra.
Similarly, appellant has made no showing that defendant was compelled to utilize his peremptory challenges unwisely, or that any jurors were dismissed by the state because they opposed the death penalty. Indeed, if defendant did in fact believe that jurors who favor the death penalty are more conviction prone, then the few questions asked by the State on this subject aided his prudent exercise of peremptory challenges. The defendant has shown no prejudice, no abridgement of his right to a fair and impartial jury and no abuse of the trial court's discretion. This assignment does not present reversible error.

ASSIGNMENT NO. 12
Appellant argues the trial judge erred in failing to charge the jury as to certain key definitions of terms contained within the lesser included and responsive offense of manslaughter.[3] As appellant contends, the jury was never[4] instructed as to the definitions of "misdemeanor," "felony," and "intentional misdemeanor," nor was the jury given the definitions of any non-enumerated felonies or intentional misdemeanors pertinent under either side's theory of the case. Defendant argues that the jury was therefore incapable of returning a verdict of manslaughter.
In Louisiana the accused is statutorily entitled to have the trial court instruct the *474 jury as to the law on the charged offense and on any responsive offenses. LSA-C. Cr.P. arts. 803, 814, 815. When the accused requests and is refused an instruction on a lesser and included offense, or when the accused timely objects to the court's failure to give a responsive offense instruction to which he is statutorily entitled, the conviction may be reversed. State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982), cert. denied 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983).
The difficulty here arises from the fact that the defendant did not object to the trial judge's failure to give the instructions and definitions complained of above. The general rule is that absent a contemporaneous objection a defendant may not on appeal complain of the trial judge's charge to the jury. LSA-C.Cr.P. art. 841. Moreover, under LSA-C.Cr.P. art. 920, a defect in the general charge is not an error "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." State v. Progue, 350 So.2d 1181 (La.1977).
The Louisiana Supreme Court has held that the trial judge's failure to instruct the jury on the definitions of responsive verdicts or essential elements of the offense charged may not be raised on appeal absent contemporaneous objection. State v. LeBlanc, 506 So.2d 1197 (La.1987); State v. Roche, 341 So.2d 348 (La.1976); State v. Craddock, 307 So.2d 342 (La.1975); State v. Smith, 339 So.2d 829 (La.1976), cert. denied 430 U.S. 986, 97 S.Ct. 1685, 52 L.Ed.2d 381 (1977).
In State v. LeBlanc, supra, the court refused to allow defendant to complain on appeal that the trial court failed to include a lesser and included offense in the instruction and the verdict sheet, absent a contemporaneous objection. In State v. Craddock, supra, and State v. Roche, supra, the court held that the trial court's failure to instruct the jury on responsive verdicts could not be raised on appeal absent contemporaneous objections. In State v. Smith, the court would not allow defendant to complain on appeal that the jury was not instructed on the definition of armed robbery, an essential element of the felony-murder with which he was charged, where there was no contemporaneous objection.
In accordance with this jurisprudence, we find that defendant's failure to make a contemporaneous objection precludes his raising on appeal the trial court's failure to instruct the jury on those felonies and misdemeanors included in the responsive verdict of manslaughter.
Defendant argues that he falls under the exception to the contemporaneous objection rule recognized in State v. Williamson, 389 So.2d 1328 (La.1980). In that case, fundamentally erroneous misstatements of the essential elements of the charged offense were found to require reversal, despite the defendant's failure to raise an objection in the trial court. The court found that the error, which involved the very definition of the crime of which defendant was in fact convicted, was of such importance and significance as to violate fundamental requirements of due process.
Assuming for the sake of argument, but not holding, that the trial court's failure to enumerate and define the applicable felonies and intentional misdemeanors included in manslaughter amounted to a fundamentally erroneous misstatement of the essential elements of an offense, we nevertheless would not reverse the defendant's conviction. When counsel for defendant fails to comply with the contemporaneous objection rule, even in the case of a fundamentally erroneous instruction on the elements of an offense, defendant is required to carry the burden of satisfying the court that the procedural default (the failure to raise the complaint properly) was excusable and was not the result of trial strategy. State v. Mart, 419 So.2d 1216 (La.1982).
The defendant has failed to carry this burden in the instant appeal. In his supplemental and amended brief, defense counsel stated that he deemed it "inappropriate to discuss in brief whether or not the absence of a contemporaneous objection was the result of a deliberate trial strategy or alternatively, simply did not cross his mind one way or the other during trial." *475 Further, defendant advanced several persuasive arguments which indicated that it would have been good trial tactics not to have raised the error at the trial level.
The failure of the trial court to instruct the jury regarding the definitions of certain elements of the manslaughter statute is not reversible error under the circumstances of this record.
There is no merit in this assignment of error.

ASSIGNMENT NO. 13
Appellant contends the trial court erred in failing to grant his motion for new trial filed September 22, 1987. He incorporates by reference the argument of his other assignments of error. This was his only ground for seeking a new trial. As we considered each assignment of error, we found it to be without merit. Considering them all together, we reach the same conclusion.
This assignment of error has no merit.

ASSIGNMENT NO. 14
The defendant complains that the evidence introduced is insufficient to support his conviction. The jury returned a compromise verdict which appellant contends does not "fit" the evidence, but which the jury apparently deemed to be fair, as allowed by LSA-C.Cr.P. art. 814. In State ex rel. Elaire v. Blackburn, supra, our Supreme Court recognized the validity of the "compromise" verdict stating:
... the defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. * * * However, if the defendant does not enter an objection (at a time when the trial judge can correct the error), then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense, whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury.
In this situation our review of the sufficiency of the evidence must determine whether the evidence adduced at trial would have supported a conviction of the offense charged. If it does, the jury's verdict is authorized. State ex rel. Elaire v. Blackburn, supra.
In order to satisfy due process standards, the record evidence, viewed in the light most favorable to the prosecution, must be sufficient for a rational juror to conclude that the essential elements of the crime were proven beyond a reasonable doubt. LSA-C.Cr.P. art. 821; Jackson v. Virginia, supra.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983). Moreover, the Supreme Court recently noted that "although the circumstantial evidence rule (La.R.S. 15:438) may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observation of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence." State v. Chism, 436 So.2d 464, 470 (La. 1983).
In the case at bar the evidence viewed in the light most favorable to the prosecution shows that the defendant was in the company of Wyatt prior and subsequent to the armed robbery and murder of Mr. Gresham. Wyatt, age 17, testified that Holland, age 29 at time of trial, masterminded the plan to rob the Globe. To make the plan work, Holland informed Wyatt of various details concerning the layout of the store, where the money was located, and warned him that Mr. Gresham kept a gun *476 in the safe. The defendant knew that Wyatt carried his gun into the Globe after he left the defendant's car. Defendant waited at the Dew Drop Inn, just down the street from the Globe, and served as the get-away driver after the robbery and murder took place. Defendant received $125 from the proceeds of the robbery. Viewing the evidence in the light most favorable to the prosecution, the evidence is sufficient for a rational factfinder to have found that defendant was a principal in the armed robbery of Mr. Gresham, and that during the robbery Mr. Gresham was killed by Holland's accomplice Wyatt.
Appellant argues that this guilty verdict cannot properly be founded on Wyatt's testimony because his credibility was destroyed. It is the jury's function and not that of the appellate court to assess the credibility of witnesses. State v. Trosclair, 443 So.2d 1098 (La.1983). Where the trier of fact has made a rational credibility call, an appellate court should not disturb it. State v. Mussall, 523 So.2d 1305 (La.1988). Here we cannot say that the jury acted irrationally in choosing to believe Wyatt rather than Holland.
Thus the evidence would support a conviction of second degree murder under LSA-R.S. 14:30.1 A(2). The jury verdict of guilty of manslaughter was a compromise verdict, apparently because there was no proof that defendant believed or desired that Mr. Gresham would be killed and because he was not the actual gunman.
However, as the court said in State v. Taylor, 173 La. 1010, 139 So. 463 (1932), cert. denied 285 U.S. 547, 52 S.Ct. 408, 76 L.Ed. 938 (1932):
Both in morals and in law, if a man means one wrong and does another, he is punishable. This is true as to the individual, even though the killing may be unintentional or even accidental. Where one shares with others in the burglarious intent and act, and killing results from it as one of its natural, ordinary, and probable consequences he will not be heard to say that he did not intend or share in it.
While the evidence may not have supported a conviction for manslaughter, the evidence would have supported a conviction of the charged offense.
This assignment of error has no merit.

ASSIGNMENTS OF ERROR NOS. 15, 16 and 17
These three assignments of error in essence allege that the sentence of 21 years at hard labor is unconstitutionally excessive, and the trial court failed to fully comply with the sentencing guidelines of LSA-C.Cr.P. art. 894.1.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C. Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with the article. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981).
The court noted in sentencing the defendant that he was 28 years of age, unmarried, has two children, and has a ninth grade education. The court considered the fact that he has consistently maintained he was trying to talk Mr. Wyatt out of the robbery. The court noted the seriousness of the offense and stated there were no grounds to excuse or justify the defendant's conduct and that the victim did not induce or facilitate the crime. The court stated that the defendant should have contemplated his conduct would cause serious *477 harm. The court noted that the defendant has no history of delinquency and only three misdemeanors, none of which were misdemeanors affecting a person.
The court stated that due to the loss of life, the offense is "one of the most serious offenses in Louisiana." The court found that the defendant was in need of correctional treatment best provided in a custodial environment, and that a lesser sentence would deprecate the seriousness of the offense. As an aggravating factor, the court noted the betrayal of trust to the Gresham family, who had trusted the defendant. The trial court adequately considered the factors of LSA-C.Cr.P. art. 894.1.
Our review must also determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So. 2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983).
The fact that the defendant was not acquitted indicates that the jury must have accepted the state's version of the case and rejected that advanced by the defendant. While the jury undoubtedly felt it inappropriate to convict this defendant of the same offense as the triggerman in the shooting, and entered a compromise verdict, the offense actually committed was not manslaughter, but second degree murder. See State v. Freeman, 521 So.2d 783 (La.App. 2d Cir.1988). Since the conduct involved is not adequately described by the offense, the concept that the maximum sentence can be imposed only for the most serious violation and the worst type of offender is not applicable. State v. Lanclos, supra.
Considering the benefit received by the defendant from the compromise verdict and the factors discussed above, we find the sentence of 21 years at hard labor is not an abuse of discretion.
These assignments of error have no merit.

ASSIGNMENT NO. 18
Defendant has asked this court to search the record for errors patent. We have done so, and our inspection has revealed none.

ASSIGNMENT NO. 19
In his final assignment of error appellant contends the trial judge erred in denying the motion for new trial filed June 6, 1988. When the motion was filed this court had jurisdiction over the case, which was on appeal. We remanded the case to the court below to allow a hearing on the motion for new trial. At the end of the hearing the trial judge denied the motion.
The new evidence on which defendant bases his motion for new trial can be summarized as follows:
At defendant's murder trial, Wyatt testified that Holland had not told him in the summer of 1985 that he worked at Globe Furniture. At defendant's conspiracy trial, approximately a year later, Wyatt's testimony can be construed to be that Holland did tell him in 1985 that he worked for Globe but he did not recollect this at the murder trial. However, the testimony also can be construed to mean that Holland told Wyatt on the day of the robbery-murder that he worked at Globe in 1985.
At defendant's murder trial Wyatt testified that he had taken the bus downtown and then walked to the Pyramid. He was impeached with an earlier statement given to the police in which he stated he was driven downtown by a friend named Toy. At the murder trial Wyatt denied knowing anyone named Toy. During the conspiracy trial Wyatt maintained his testimony that *478 he had ridden the bus and walked to the Pyramid, but admitted that he knew someone named Toy. He said that his earlier statement to the police was untrue.
At the murder trial Wyatt testified that the only cars parked at the Pyramid that morning belonged to Holland and the owner of the club, "Miss Janie." At the conspiracy trial Wyatt testified that there were two cars, one belonging to Holland and another belonging to someone else. He stated he thought the owner of the other car was a male and it possibly could have been Toy.
Lee Tom McGee, a prisoner at Angola who knows both defendant and Wyatt, wrote defendant's counsel. The letter said that Wyatt had asked McGee for information about a perjury charge, and that Wyatt had told him "that Mr. Holland didn't have anything to do with this murder." At the hearing on the motion for new trial McGee identified the letter he had sent, and reiterated that Wyatt had told him defendant had nothing to do with the murder.
Terry Lenard, also an inmate at Angola, wrote defense counsel a letter stating that "Joe W." had told him Holland had nothing to do with the armed robbery and murder, that defendant had just given him a ride and knew nothing. At the hearing on the motion for new trial Lenard denied that the letter was in his handwriting, and stated he had no recollection of any conversations with Wyatt concerning the crime. Defense counsel's law partner and defense counsel both took the stand at the hearing on the motion for new trial, and testified concerning their interview with Lenard at Angola on August 5, 1988. Both testified that Lenard said he had been told by Wyatt that defendant was just riding around with him and didn't have anything to do with the crimes. Both stated that Lenard never denied writing the letter.
Defendant testified at the hearing that Wyatt had confessed to him on the way back to Angola after the conspiracy trial that he had lied at the murder trial, saying he knew that defendant was not involved in the crime and that he had been planning to rob the Globe for a month.
Wyatt took the stand at the hearing and denied telling Holland, McGee and Lenard that defendant had nothing to do with the robbery and murder. Wyatt emphasized he had told the truth at the murder trial.
Defendant argues that this is new evidence, which could not have been discovered before the trial and entitles defendant to a new trial.
The trial judge is afforded considerable discretion in evaluating the impact of newly discovered evidence, and his denial of a motion for new trial will not be disturbed on appeal absent a clear abuse of that discretion. State v. Clayton, 427 So.2d 827 (La.1982). In evaluating whether the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is of such a nature that it probably would produce an acquittal in the event of retrial. State v. Prudholm, 446 So.2d 729 (La.1984).
Most of the inconsistencies in Wyatt's testimony between the two trials dealt with issues on which Wyatt was impeached at the murder trial by his prior statements. When the new evidence is merely cumulative on an issue upon which the victim's testimony had been successfully impeached, it is not new evidence which would have probably changed the verdict. State v. Bonnett, 524 So.2d 932 (La.App. 2d Cir.1988), writ denied 532 So.2d 148 (La. 1988).
This newly discovered evidence concerns alleged recantations by Wyatt to convicts. Wyatt denies the recantations. Actual recantations are highly suspicious and, except in rare circumstances, a motion for new trial should not be granted on the basis of a recantation since that disclaimer is tantamount to admission of perjury so as to discredit the witness at a later trial. State v. Prudholm, supra; State v. Tyler, 342 So.2d 574 (La.1977). In the instant case, the reporters of the recantation are suspect witnesses themselves, and one even denies writing the letter and did not *479 recall the conversation. Accordingly, there are no special circumstances which would suggest that the reported recantations are themselves reliable. The trial judge could reasonably have concluded that this evidence would not have created a reasonable doubt of guilt in the mind of a reasonable juror.
A similar situation occurred in State v. Toussaint, 502 So.2d 599 (La.App. 3d Cir. 1987). Fellow inmates of Toussaint and his accomplice Brown stated they heard Brown admit that Toussaint had nothing to do with the robbery. This evidence was the basis for Toussaint's motion for new trial. The trial court denied the motion and the Third Circuit affirmed stating:
... If there is conflicting testimony as to a factual matter [at trial], the question of the credibility of the witness is within the sound discretion of the triers of fact. State v. Klar, 400 So.2d 610 (La.1981); State v. Cobbs, 350 So.2d 168 (La.1977). It appears that the jury did not find Toussaint's version of the facts credible. The trial judge was also in a position to make a credibility evaluation of Toussaint's cellmate who testified at the motion for a new trial. The testimony by Toussaint's cellmate and Brown's ambiguous statement could not have made Toussaint's testimony more credible and is simply cumulative. We cannot say the trial court's judgment in denying the motion for new trial was error ... (Brackets ours)
We find no abuse of the trial judge's great discretion in denying defendant's motion for a new trial. This assignment of error has no merit.

DECREE
We have found no merit in defendant's assignments of error, and accordingly, affirm his conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.

ON APPLICATION FOR REHEARING
Before MARVIN, NORRIS, LINDSAY, FRED W. JONES and SEXTON, JJ.
Rehearing denied.
NOTES
[1] LSA-R.S. 14:24 provides:

§ 24. Principals
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
[2] LSA-R.S. 14:30.1 A(2) provides:

§ 30.1. Second degree murder
A. Second degree murder is the killing of a human being:
* * * * * *
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
[3] LSA-R.S. 14:31 provides in pertinent part:

§ 31. Manslaughter
Manslaughter is:
* * * * * *
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
* * * * * *
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.
[4] Aware of the recent State v. Copeland, 530 So.2d 526 (La.1988) defense counsel supplemented the record to provide this court with the opening and closing remarks of both counsel. In none of these were the omitted terms explained to the jury.