520 So.2d 1184 (1988)
STATE of Louisiana
v.
Wayne GILBERT.
No. 87-KA-393.
Court of Appeal of Louisiana, Fifth Circuit.
January 11, 1988.
*1185 Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for plaintiff/appellee.
Martha E. Sassone, Indigent Defender Bd., Gretna, for defendant/appellant.
Before BOWES, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
Wayne Gilbert appeals his conviction and sentence for violation of LSA-R.S. 14:64, armed robbery. Gilbert was charged by bill of information on August 29, 1986, for an armed robbery that occurred the night before. He pled not guilty and a jury trial was held December 1 and 2, 1986. On a vote of ten to two, the jury found Gilbert guilty as charged. At a sentencing hearing on December 18, 1986 the court denied the defendant's motion for arrest of judgment and for new trial. The state filed a multiple offender bill based on Gilbert's prior conviction on April 28, 1986 of simple robbery, LSA-R.S. 14:65, to which he had pled guilty. Upon being informed by counsel that defendant acknowledged the charges and waived all sentencing delays, the trial judge sentenced the defendant to serve ninety-nine years at hard labor without benefit of parole, probation, or suspension of sentence, in accordance with LSA-R.S. 15:529.1(A)(1).
ASSIGNMENTS OF ERROR:
1. The trial court erred in overruling defense counsel's objection to the State's leading the witness.
2. The trial court erred in overruling defense counsel's objection to hearsay testimony.
3. The trial court erred in not including the defendant's requested special jury charges in his charges to the jury.
4. The trial court erred in denying defendant's motion for new trial.
5. The trial court erred in denying defendant's motion in arrest of judgment.
6. The evidence presented at trial was not sufficient to justify the verdict returned.
7. The appellant was given an excessive sentence.
8. Any and all errors patent on the face of the record.
9. The trial court erred in overruling defense counsel's objection to the State's use of peremptory challenges.
The following errors were assigned after a supplement to the record was filed:
SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER 1
The trial court erred in allowing Mr. Williams, a potential juror, to be dismissed for cause.
SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER 2
The trial court erred in allowing potential jurors to be dismissed on grounds of race.
As numbers 1, 2, 3, and 9 were not argued in the appellant's brief, they are deemed abandoned. Uniform RulesCourt of Appeal no. 2-13.4.
FACTS
The armed robbery of the Labarre Road Shell Service Station on Jefferson Highway took place at about 10:30 p.m. on August 28, 1986. A black man entered the cashier's area wearing a hat and a handkerchief folded into a triangle that covered his face from nose to chin. Joseph Shields was on duty, alone, preparing for his relief to come in at 11:00 p.m. The perpetrator held a revolver and said, "All right, this is it." He then told Shields to go toward the bathrooms behind the cashier's area and ordered him into the ladies' room. Shields heard him attempting to open the computerized cash register and a few seconds later the perpetrator told Shields to come out and open it. He put the pistol to the back of Shields' head, cocked the hammer, told him to hurry, and said, "Did you hear it click, bitch?" Shields opened the register and while he was answering the telephone *1186 the perpetrator removed cash and checks from the drawer. He left through the front door, at which point Shields called the police. A total of about $800 was missing from the register and at some point the perpetrator had taken Shields' wallet containing about $80.
Shields was positive that the robber was a young man he had seen and waited on several times and who was known as "Crazy" Wayne. He said he recognized him from the upper part of his face, his body build, and his voice. He was unable to recall the perpetrator's clothing. The police knew of "Crazy" Wayne as Wayne Gilbert and arrested him the following morning. At trial only Shields and a sheriff's deputy testified for the state but the defense presented eight alibi witnesses who testified to having seen him or been with him on the night of the crime. Gilbert did not testify in his own defense.
ASSIGNMENTS OF ERROR NUMBERS 4, 5, AND 6
These assignments attack the denial of the motions for new trial and for arrest of judgment, and the sufficiency of evidence to justify the verdict.
In assessing the sufficiency of evidence, the due process standard as stated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) requires that the reviewing court determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986). The Jackson v. Virginia standard has been codified in Louisiana by C.Cr.P. art. 821.
The crime of which Gilbert was convicted is armed robbery, which is defined in LSA-R.S. 14:64 as, "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
The defense complains specifically that the perpetrator was not sufficiently identified as the victim saw only the eyes of the perpetrator for only fifteen seconds and heard his voice. The only print, a palmprint taken from the ladies' room door, did not match Gilbert's. The state produced neither the stolen money nor evidence showing that the defendant was in possession of it.
It is the duty of the State to present evidence which negates the possibility of a misidentification. The Supreme Court stated in State v. Davis, 409 So.2d 268 (La. 1982) at 270, that "... In the final analysis, it must be determined whether under all the circumstances of a particular case there is a very substantial likelihood of irreparable misidentification." See also State v. Knox, 472 So.2d 170 (La.App. 5th Cir.1985). Shields testified that he had seen Gilbert at the station three to four times a week over the preceding two to four months. There was a small convenience store in the office and Shields had waited on him, usually viewing him from a distance of only eighteen to twenty-four inches. They had conversed and he was familiar with his voice. On the night of the robbery the cashier's area was well lit with fluorescent lighting. Despite the handkerchief and hat Shields stated that the upper part of the thief's nose, his eyes and most of his forehead were visible. The hat was not pulled across his eyes. Although they were face to face for an estimated fifteen seconds only, Shields had ample time to hear the thief's voice, as he kept talking and telling him what to do. The witness further explained that he had had occasion to ask the defendant his name on one occasion when he waited on him; the defendant gave a name other than Wayne Gilbert, and another employee who was present confirmed that the customer was Wayne Gilbert. Shields testified that, "that helped to cement any identification of him and I had seen him a few times around the edges of the property after that." He explained his inability to remember the type of shirt the perpetrator was wearing because his attention was focussed on the face and not the clothing.
Six of the eight alibi witnesses all covered the defendant for the hour of 10:30 p.m., although their stories were conflicting and *1187 rambling as to timing other than 10:00 to 11:00 p.m. and as to other details of the evening. They had seen him at the home of three of the witnesses before that time and some time after 10:00 four of them and Gilbert went riding and to Bourbon Street, returning well after midnight.
Faced with contradictory versions of the evening's events, the jury weighed the credibility of each witness and evidently believed the testimony of Joseph Shields. It is not the function of an appellate court to assess credibility and it will not review for sufficiency of evidence beyond the standard set out in Jackson v. Virginia, supra. State v. Rosiere, 488 So.2d 965 (La.1986).
As to the state's failure to produce such tangible evidence as fingerprints or stolen money, it is sufficient to present testimony of a witness who can testify that he observed all the elements of the offense. This the state has done. State v. Brown, 497 So.2d 29 (La.App. 5th Cir.1986). Accordingly, assignments of error numbers 4, 5, and 6 have no merit.
ASSIGNMENT OF ERROR NUMBERS 7 AND 8
The defendant complains that the sentence of ninety-nine years without benefit of parole, probation, or suspension of sentence is constitutionally excessive. He also asks that we examine the record for errors patent. We find an error in the habitual offender proceeding.
The state presented a multiple offender bill at the sentencing hearing. LSA-R.S. 15:529.1 provides for mandatory augmentation of punishment for a second felony conviction up to a maximum of twice the longest term prescribed for a first conviction. For a first conviction under LSA-R. S. 14:64 the sentence is hard labor for five to ninety-nine years.
LSA-R.S. 15:529.1(D) sets out the procedure to be followed when it appears that a person convicted of a felony has been convicted of a previous felony. The statute reads, in pertinent part:
... [T]he court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and the judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies, as set forth in the information. If the judge finds that he has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted, the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated. [Emphasis supplied.]
In the case before us, the record does not reveal that the defendant was apprised of his rights before admitting to the prior conviction. We note that sentencing was set for December 12, 1986 but continued until December 18, as the defendant appeared unrepresented on December 12. He was assigned an Indigent Defender Board attorney for the sentencing, who received a copy of the defendant's previous conviction and who stipulated to the authenticity of the fingerprints on the first conviction without having the state call in an expert. The attorney stated:
For the record, I just conferred with the defendant and he informs me that he, indeed, did plead guilty in the 24th Judicial District Court on the charge of theft.
. . . . .
I have spoken with the defendant and I have advised him about the delay in sentencing and we ask to waive our delays and have immediate imposition of sentencing.
At that point the court imposed sentence, with reasons, from the bench. The statute absolutely requires that the court, not *1188 counsel, advise the defendant of his rights; in the absence of such advice, the appellate court must vacate the sentence and remand for resentencing. State v. Johnson, 432 So.2d 815 (La.1983).
As the case is to be remanded we pretermit consideration of whether or not the sentence was excessive.
SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER 1
Counsel for defendant objected to the dismissal of a black venireman for cause on grounds that the basis for the challenge was race and not one of the enumerated grounds for cause; that is, that the state's challenge for cause was a subterfuge for eliminating a black from the jury in violation of the holding of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) Batson dealt solely with the state's use of peremptory challenges and set out the elements required for a prima facie case of purposeful discrimination, as follows at 1723:
... To establish such a case, the defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, supra, 430 U.S. [482] at 494, 97 S.Ct. [1272] at 1280 [51 L.Ed.2d 498 (1977) ] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Avery v. Georgia, supra, 345 U.S. [559] at 562, 73 S.Ct. [891] at 892 [97 L.Ed. 1244 (1953) ] Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
The Louisiana Code of Criminal Procedure, article 795(B) provides, in pertinent part, that, "A peremptory challenge by the state shall not be based solely upon the race of the juror." At this time, the jurisprudence has not extended the application of Batson to challenges for cause.
In the voir dire of the case before us the responses of Mr. Williams, whom the defense alleges to have been dismissed because of race, were to the effect that he wished to be excused and would not listen to the testimony with an open mind or be impartial. He stated that he had in the past been a victim of misidentification and that experience would affect his judgment in this case. He finally said, "No. I do not want to serve on the jury...." (Suppl.R. 74-81). Accordingly, the decision of the judge to excuse him for cause was correct. La.C.Cr.P. art. 797.
SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER 2
Although the defense in his memorandum of December 2 complained of the state's use of peremptory challenges to remove four other prospective jurors who he alleges were "not clearly white," it is clear from the record that the defense did not object at the time the challenges were made, and the state used peremptory challenges to excuse two white jurors. One black man was empaneled.
Accordingly, we find no racial discrimination by the state in the use of peremptory challenges or the challenge for cause of one black juror.
For the reasons assigned above, the conviction appealed from is affirmed; defendant's sentence is vacated and the case remanded for resentencing in proceedings not inconsistent with this opinion.
CONVICTION AFFIRMED, SENTENCE VACATED, AND REMANDED.