588 So.2d 1317 (1991)
STATE of Louisiana, Appellee,
v.
Demetrious BROWN, Appellant.
No. 22818-KA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
*1319 Allan R. Harris, Indigent Defender Office, Shreveport, for defendant, appellant.
William J. Guste, Jr., Atty. Gen., Paul J. Carmouch, Dist. Atty., Kenneth B. Pennywell and Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for plaintiff, appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
The defendant, Demetrious Brown, was charged by bill of information with armed robbery, La.R.S. 14:64. He proceeded to a jury trial and was found guilty as charged. The trial court later sentenced him to 15 years at hard labor without benefit of parole, probation or suspension of sentence. Brown now appeals, urging the evidence was insufficient to convict, citing alleged discrepancies between the victim's description of her assailant and Brown's physical traits, and citing Brown's alibi evidence; and that the sentence is constitutionally excessive. For the reasons expressed, we affirm.

Factual background
The victim, Tracy Vandiver, stopped at the Shell Service Station at 3300 Hearne Avenue in Shreveport on Christmas eve, December 24, 1989. En route to Doyline, she stopped only to use the phone. As she was completing her call, two black men walked up. One stood behind her, poked what felt like a gun barrel in her back and said, "Don't look back." The other, standing in front, held a .45 semi-automatic pistol close to her face and said, "Empty your pockets." Though she was terrified, Ms. Vandiver got an excellent view of the man in front of her. She dropped her wallet, which had $65 in it, some change and the keys to her 1988 Dodge Ram pickup. The men picked up the money and keys and scurried behind the Shell Station toward an alley. Ms. Vandiver ran into the station and told the cashier to call the police.
Officer Wilson, who was on patrol in the area, testified he received the call at 7:50 p.m. and arrived at the scene within three minutes. He spoke to Ms. Vandiver, getting information for his offense report. Ms. Vandiver admitted telling him that the man who stood in front of her was roughly her own height, 5'6" or 5'7", but this detail is not in the report. On foot, Officer Wilson could not find any suspects in the area; he noted, however, that the place was well lighted. He left to circle the area in his patrol car.
Moments later Ms. Vandiver stepped out of the Shell Station to remove some papers from her truck. She suddenly realized that two men, who resembled her assailants, were sitting in the truck; the man behind the wheel was wearing a beige jacket. They drove the truck down the alley. Ms. Vandiver ran to the street and flagged down Officer Wilson, who was driving by.
Shortly before midnight Officer Grantham observed a Dodge truck that fit the description of Ms. Vandiver's except for the license plate. There were three men in the cab and one in the bed. With the assistance of two other officers, Grantham engaged the truck in a high speed chase in Bossier City. The truck eventually wrecked and the three men in the cab fled on foot; they were not found. The person in the bed of the truck, a juvenile named McCoy, did not escape. He told officers that he was not involved in the robbery but that he knew someone who was. McCoy said it was a 17-year old named "Brown," who was 5'11", slender and lived on West College Street. Detective Childers contacted Shreveport Police's Youth Division and learned that Demetrious Brown met the description. He prepared a photo line-up that included Brown's picture.
On January 3, 1990 Detective Childers met with Ms. Vandiver, who now described her assailant as 5'11" or 6'. He showed her the line-up; she positively identified Brown as the robber, without hesitation. Childers obtained a warrant and arrested Brown *1320 later that day. Brown told officers he had been at a party that night, as his mother and aunt (Gussie Brown and Veronica LaCour) would verify. Mrs. Brown told Detective Childers that her son was at home that night; she said nothing about a party. Ms. LaCour said that she went to a party about 9:00 that night and saw Brown there. Detective Childers noted that the party was within close walking distance of the Shell Station on Hearne, where the robbery had occurred before 8:00 p.m.
At trial in April 1990, Ms. Vandiver again positively identified Brown as the assailant who stood in front of her. She admitted describing him as 5'6" or 5'7", but said she could not estimate his height because she was afraid. She insisted, however, that her assailant had "a face I will never forget," and identified Brown as that assailant. She also testified that when she viewed her truck at the impound lot, the license plate was changed.
For the defense several witnesses testified that they were at the party on December 24, that Brown was there too and he did not leave during the course of the evening. Ms. LaCour testified that she was elsewhere and did not get to the party until 9:00 or 9:30 p.m. Mrs. Brown did not testify; the juvenile, McCoy, was subpoenaed by both state and defense but was not present when called.
Brown originally filed eight assignments of error with the trial court. Three of these were neither argued nor briefed and are abandoned. URCA Rule 2-12.4; State v. Williams, 338 So.2d 672 (La.1976).

Discussion: Sufficiency of evidence
By his second, third and fourth assignments Brown urges the verdict was contrary to the law and evidence. He argues the jury could not reasonably find him guilty because of the "serious discrepancies" between the description given by Ms. Vandiver and his own physical characteristics. He also argues the verdict was unreasonable because Ms. Vandiver's account of the robbery lacked substantial corroboration in light of the numerous alibi witnesses.
An allegation that the verdict is "contrary to the law and the evidence" is, strictly speaking, grounds for seeking a new trial. La.C.Cr.P. art. 851. Brown did not move for a new trial or for post verdict judgment of acquittal. La.C.Cr.P. art. 821. Nevertheless, the thrust of the argument is to contest the sufficiency of evidence to convict. The proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988).
Armed robbery is defined as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La.R.S. 14:64. Ordinarily, the testimony of an eyewitness that he observed all the elements of the offense, coupled with an identification of the defendant as the perpetrator, is sufficient to support a conviction. State v. Woods, 444 So.2d 1332 (La.App.2d Cir. 1984); State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984). Tangible evidence such as stolen money or a gun is not required. State v. Gilbert, 520 So.2d 1184 (La.App. 5th Cir.1988). If the eyewitness's account is riddled with "numerous inconsistencies" and "unusual coincidences," corroboration may be required. State v. Mussall, supra. The jury is entitled to make reasonable inferences as to credibility and such findings are given great weight. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Holland, 544 So.2d 461 (La.App.2d Cir.1989), writ denied 567 So.2d 93 (1990).
Ms. Vandiver testified that two men, one of whom was armed with a .45 revolver, forced her to give them money and keys that she had on her person. This evidence proves all the essential elements of the offense. The truck was later recovered. *1321 There is no showing of the kind of inconsistencies and coincidences that would require further corroboration under State v. Mussall, supra.
The remaining question is identification. In brief Brown cites State v. Davis, 409 So.2d 268 (La.1982), which sets out guidelines to exclude an out-of-court identification on a motion to suppress. In the instant case Brown did not file a motion to suppress or even object to the evidence of the photo line-up. The argument is therefore waived as far as the photo line-up is concerned. La.C.Cr.P. art. 841. Moreover, we perceive nothing unfair about the line-up procedure used here.
An in-court identification is generally permitted provided the source of the identification is independently based. State v. Madison, 345 So.2d 485 (La.1977); State v. Evans, 512 So.2d 615 (La.App.2d Cir.1987), writ denied 516 So.2d 367 (1988). The court may consider the prior acquaintance of the witness with the accused, the length of time the witness observed the perpetrator, and the circumstances under which the observations were made. State v. Newman, 283 So.2d 756 (La.1973), cert. denied 415 U.S. 930, 94 S.Ct. 1442, 39 L.Ed.2d 489 (1974); State v. Evans, supra, and citations therein. Here, Ms. Vandiver did not know the accused. However, she had a close look at her assailant's face during the course of the robbery, and this occurred in an area that was well lighted. Ten days after the robbery she quickly and positively picked Brown in a photo line-up. True, her estimate of her assailant's height was four or five inches shorter than Brown (as shown by the PSI, not the trial transcript), but she explained that she was concentrating on the man's face rather than his exact height. She also explained that the cowboy boots she was wearing that night made her a little taller. Most notably, she stressed that she could not forget the assailant's face and she was positive that Brown was the man. Days later, she gave Detective Childers a more accurate description. Given these facts, the jury was entitled to discount the discrepancy and find that Brown was one of Ms. Vandiver's assailants.
Finally Brown cites the testimony of the various defense witnesses who all testified he was at a party when the offense occurred. At trial, the state showed that every one of the persons at the party was either a friend or relative of Brown's. On the whole, the alibi testimony is rambling and hard to piece together. Two of Brown's aunts, Sheila Jones and Veronica LaCour, testified that Brown was with them at Sheila's house until 8:30 or 9:30, when he left for the party; and yet Ms. Jones admitted that Brown was in and out while Ms. LaCour said he was there with her the whole time. Other witnesses, like Beverly Burgy, Arthur Jones and Reggie King, admitted that Brown did not arrive at the party until 8:45 or 9:00. Given that the Shell Station was quite close to the party, the jury could have found that the witnesses saw Brown either at Sheila's house before, or at the party after, he committed the robbery. We have no basis for rejecting this credibility call. State v. Holland, supra.
Ms. Vandiver's testimony was sufficient to prove the elements of the offense and the identity of the offender. The alleged inconsistency in her description, and lack of corroborating proof and the alibi evidence, viewed in light most favorable to the state, do not create reasonable doubt. These assignments do not present reversible error.

Excessive sentence
By his first assignment Brown urges the trial court erred in imposing an excessive sentence of 15 years at hard labor. He argues that the trial court failed to provide adequate consideration for his youth and lack of an adult criminal record.
The test of excessiveness is two-tiered, the first being a review of the trial court's compliance with the mandatory sentencing guidelines of La.C.Cr.P. art. 894.1. State v. Sepulvado, 367 So.2d 762 (La.1979). Brown does not suggest that the court was remiss in analyzing the factors; in fact, the court thoroughly considered the guidelines. R. pp. 256-257. By way of factual foundation, the court noted *1322 that Brown was born in February 1969 (making him three years older than Detective Childers had said), was in good health with no alcohol problem, but had experimented with marijuana and undergone some treatment for drug abuse. Brown finished tenth grade and had some training as a cement finisher and landscaper. Although this was his first offense as an adult, Brown had an extensive juvenile record, which counsel did not traverse. There were adjudications in September 1988 for aggravated battery and October 1988 for armed robbery, and various misdemeanor charges dating back to 1982. The court was unfavorably impressed with Brown's history of armed robbery and violent crime. Most damningly, the instant offense occurred while Brown was on Christmas leave from LTI in Monroe. These facts underscore the likelihood that Brown would commit another crime and refute Brown's position in brief that as a first felony adult offender he should be treated more leniently. The court specifically stated that it was giving great consideration to Brown's youth, thus undermining the other major point of his brief. In sum, the trial court adequately complied with the guidelines and provided a full factual basis for the sentence.
The second tier is constitutional excessiveness. A sentence violates La. Const. art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, the sentence shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The district court has wide discretion in imposing a sentence within statutory limits and such a sentence will not be set aside as excessive absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Hudgins, 519 So.2d 400 (La.App.2d Cir.), writ denied 521 So.2d 1143 (1988).
Brown's conduct placed a victim in substantial danger at the point of a gun and deprived her of cash that was never recovered and a truck that was wrecked. It is all the more blameworthy, coming from a defendant with a history of violence and theft. At the same time, Brown's youth counsels in favor of a lower-range sentence. The sentencing range for armed robbery is not less than five and not more than 99 years at hard labor, all without benefit of parole, probation or suspension of sentence. La.R.S. 14:64 B. Brown's sentence of 15 years at hard labor without benefit is firmly in the lower range and does not in any way shock our sense of justice.
Moreover, our review of the cases cited in brief does not alter our conclusion. We would only cite the more apposite case of State v. Thomas, 468 So.2d 592 (La.App.2d Cir.), writ denied 474 So.2d 1303 (1985), to illustrate that Brown's sentence is, if anything, lenient.
This assignment does not present reversible error.

Conclusion
By his eighth assignment Brown requests correction of any errors patent. We find nothing we consider to be error patent. La.C.Cr.P. art. 920(2); State v. Oliveaux, 312 So.2d 337 (La.1975).
For the reasons expressed, Demetrious Brown's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.