653 So.2d 1261 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
Nathaniel Bo CULVERSON, Defendant-Appellant.
No. 26874-KA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1995.
*1262 Stephens & Stephens by James M. Stephens, Winnsboro, for defendant-appellant.
Richard Ieyoub, Atty. Gen., Billy Coenen, Dist. Atty., and John M. Lancaster, Asst. Dist. Atty., for plaintiff-appellee.
Before NORRIS and HIGHTOWER, JJ. and CULPEPPER, J. Pro Tem.
NORRIS, Judge.
Having been charged by bill of information with carrying a firearm by a student or nonstudent on school property or firearm-free zone, La.R.S. 14:95.2,[1] Nathaniel Bo Culverson *1263 proceeded to a jury trial after which he was found guilty of an attempt of the charged offense. La.R.S. 14:27. The district court later sentenced him to two and one-half years at hard labor, to run consecutively with any other sentence he might be serving. Culverson now appeals, urging by two assignments that the evidence was insufficient to convict. For the reasons expressed, we affirm.

Factual background
The incident occurred shortly after a basketball game at Pioneer Elementary School on October 4, 1993. Bo Culverson went to the game with his friend Tyron Clark, and there met with another friend, Michael Wayne Smith. During the game, Bo chatted or flirted with a 16-year-old girl he was trying to date, Latonya Thompson. According to Latonya and her cousin, 10-year-old Tanique Clark, Bo was at times annoying, causing Latonya to switch seats frequently in order to keep away from him. Latonya testified that at one point Bo said he had a gun and was going to shoot the school's new principal, but he did not display any gun inside the gym.
After the game was over, Latonya, her brother 15-year-old Carnard Thompson (who had been playing in the basketball game), Candy and a few other friends walked to the parking lot to get in a car and leave. Bo followed them, and an angry conversation ensued between him and Latonya.[2] As Latonya was stooping down to enter the front passenger door, Bo grabbed her T-shirt collar, pulled out a small pistol, held it in her face and threatened, "Shut up or I'll kill you." He also threatened Tanique with the gun. After he said a few words to Latonya, he slipped the gun into his pants and walked off the parking lot with Tyron Clark and Michael Wayne Smith.
When they got home, Latonya and Tanique reported the incident to their grandmother, who called the sheriff's office. The following day Dep. Russell took statements from Latonya Thompson, Tanique Clark, Michael Smith and Tyron Clark. On the strength of this information he arrested Bo and advised him of his Miranda rights. Bo waived his rights and said, in an unrecorded statement, that the weapon he pulled on Latonya was only a toy gun. When Dep. Russell asked for a look at the toy gun, Bo replied he couldn't show it because shortly after the incident he threw it in a ditch. He also could not remember where the ditch was. The gun was never recovered. According to Dep. Russell, no other witness said it was a toy gun.
At trial the parties stipulated that the incident occurred on Pioneer Elementary's campus, as defined by R.S. 14:95.2 B(2), and that the school had complied with the notice requirements of R.S. 14:95.2 F(1). The State offered the testimony of eyewitnesses Latonya Thompson, Tanique Clark, Tyron Clark, Carnard Thompson and Michael Wayne Smith, all of whom said that Bo pulled a pistol on Latonya. Dep. Russell testified *1264 about his investigation and related Bo's statement. Latonya's torn shirt and Bo's waiver of rights form were in evidence. Also used as exhibits at trial were a snub-nose revolver, which all witnesses said resembled the one Bo used, and two toy pistols, which counsel used for comparison. As noted, the jury found Bo guilty of attempted carrying a firearm by a student or nonstudent on school property.

Discussion
By his two assignments of error, Culverson contests the sufficiency of the evidence to support the conviction. The argument is that the evidence proves only that he was carrying a toy gun on school property, not a real gun.
The standard of appellate review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied 605 So.2d 1089 (1992); see also La.C.Cr.P. art. 821. The trier of fact has great discretion in assessing the credibility of witnesses. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989), writ denied 567 So.2d 93 (1990). Absent internal contradiction or irreconcilable conflict with physical evidence, the testimony of an eyewitness that she observed all the elements of the offense, coupled with the identification of the defendant as the culprit, is generally sufficient to support a conviction. State v. Brown, 588 So.2d 1317 (La.App. 2d Cir.1991), writ denied 592 So.2d 1298 (1992), and citations therein. If a witness is not testifying as an expert, her testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of her testimony or the determination of a fact in issue. La.C.Ev. art. 701; State v. Williams, 615 So.2d 1009 (La.App. 1st Cir.), writ denied 619 So.2d 543 (1993).
The crime with which Culverson was charged, carrying a firearm by a student or nonstudent on school property, required proof that he intentionally possessed a firearm on his person while on a school campus. R.S. 14:95.2 A. The crime for which he was convicted, attempted carrying a firearm by a student or nonstudent on school property, requires proof that he had specific intent to commit the crime and did or omitted an act for the purpose of and tending directly toward the accomplishment of his objective. R.S. 14:27 A. Although the specific intent required to prove an attempt is narrower than the general intent required to prove the completed felony of R.S. 14:95.2, an attempt is always viewed as a separate but lesser grade of the intended crime. La.R.S. 14:10, 27 C; State ex rel. Elaire v. Blackburn,424 So.2d 246 (La.1982). Any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by the defendant. R.S. 14:27 C. Although intent is a question of fact, it need not be proved as a fact; it may be inferred from the circumstances of the transaction. State v. Kahey, 436 So.2d 475 (La.1983).
Culverson argues that the verdict itself, guilty of attempt, indicates the jury had reasonable doubt as to whether the object he wielded that night was a "firearm." He explains that the crime, carrying a firearm by a student or nonstudent on school property, requires the existence of an actual firearm. The verdict, he contends, suggests the jury found only that Culverson intended the alleged victim to believe he had a firearm, but without proof of an actual firearm, he could not be convicted of the lesser included offense.
We have closely reviewed the evidence. Every witness testified that the object in Culverson's hand was a gun (Tyron Clark said Culverson had "what looked like a gun"). Defense counsel tried to create confusion by showing them a plastic toy pistol. However, Latonya testified that when the gun touched her face, it felt cold, like metal; Tanique testified that it was "a little rusty," a state incompatible with a plastic toy. While these young ladies were not experienced with guns, *1265 they were certainly able to relate their ordinary perceptions of the firearm used. La. C.Ev. art. 701. Moreover, both Carnard Thompson and Michael Wayne Smith, who appeared to have some knowledge of guns, were largely convinced that Culverson's was real.
Even more persuasive is Culverson's own conduct. During the game, he told Latonya that he had a gun and would shoot the new principal; this is inconsistent with someone who is carrying a toy gun in his pocket. Later, Culverson told Dep. Russell that he could not produce the toy gun because he threw it in a ditch and did not recall where the ditch was. This sounds like an attempt to dispose of a genuine firearm used in an assault; if the gun had been a toy, Culverson more than likely would have retrieved it and tried to exonerate himself. He did not.
On the facts presented, a rational factfinder could have disregarded Culverson's exculpatory statement to Dep. Russell, accepted the testimony of the other witnesses, drawn reasonable inferences from Culverson's words and actions, and readily concluded that he possessed a real firearm. Viewed in light most favorable to the State, the evidence proves beyond a reasonable doubt that Culverson did in fact carry a firearm on the school premises. The responsive verdict of attempt is permissible. R.S. 14:27 C. Moreover, the State's failure to produce the firearm is of no moment, as the witnesses all testified that Culverson was actually wielding one. State v. Rash, 444 So.2d 1204 (La.1984); State v. Brown, supra; State v. Marshall, 479 So.2d 598 (La.App. 1st Cir.1985). Culverson's assignments do not present reversible error.
We have also reviewed the entire record and find nothing we consider to be error patent. La.C.Cr.P. art. 920(2).

Conclusion
For the reasons expressed, Nathaniel Bo Culverson's conviction is affirmed.
AFFIRMED.
NOTES
[1] At the time of the instant offense, R.S. 14:95.2 provided in pertinent part:

A. Carrying a firearm by a student or nonstudent on school property or in a firearm-free zone is unlawful and [sic] is the intentional possession of any firearm, on one's person, on a school campus, or within one thousand feet of any school campus, or on a school bus.
B. For purposes of this Section, the following words have the following meanings:
(1) "School" means any elementary, secondary, high school, vocational-technical school, college, or university in this state.
(2) "Campus" means all facilities and property within the boundary of the school property.
(3) "School bus" means any motor bus being used to transport children to and from school or in connection with school activities.
(4) "Nonstudent" means any person not registered and enrolled in that school or a suspended student who does not have permission to be on the school campus.
* * * * * *
D. Whoever commits the crime of carrying a firearm by a student or nonstudent on school property or in a firearm-free zone shall be imprisoned at hard labor for not more than five years.
E. Lack of knowledge that the prohibited act occurred on or within one thousand feet of school property shall not be a defense.
F. (1) Within thirty days after August 21, 1992, school officials shall notify all student and parents of the impact of this legislation, and within that same thirty-day period shall post notices of the impact of this Section at each major point of entry to the school. These notices shall be maintained as permanent notices. * * *
The statute has since been amended to prohibit the carrying of dangerous weapons as well as firearms on school property. La.Acts 1994 (3d Ex.Sess.), No. 38 (effective August 27, 1994).
[2] The witnesses did not fully relate the nature of the conversation, but several of them testified that Latonya and Bo exchanged obscenities.