666 So.2d 1302 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
McArthur GREEN, Defendant-Appellant.
No. 27,652-KA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1996.
*1304 William Rick Warren, Indigent Defender Board, Minden, for Appellant.
James M. Bullers, District Attorney, Whitley R. Graves, Asst. District Attorney, Minden, for Appellee.
Before MARVIN, NORRIS and STEWART, JJ.
NORRIS, Judge.
McArthur Green was charged by bill of information with armed robbery, La.R.S. 14:64. He proceeded to jury trial and was found guilty as charged. The district court later sentenced him to 20 years at hard labor without benefit of parole, probation or suspension of sentence. Green now appeals his conviction and sentence, advancing three assignments of error. We affirm.

Factual background
The victim, Cynthia Farrington, was the cashier at Gas Express, a gas station and mini-mart in Springhill, Louisiana. She was working there alone the night of Thursday, July 22, 1993; closing time was midnight. She turned off the gas pumps from inside the store and then went out to take the readings. She saw a man walk around the corner of the store and approach her. The outside lights were still on, so she saw him clearly. She told him the store was closed; he replied, "OK," and turned to walk back around the store.
Ms. Farrington then went inside the store and walked to the back to turn off the outside lights. When she returned to the front, however, she saw the same man standing at the glass front door, along with another man. Thinking they wanted to borrow her phone book to make a call on the outdoor pay phone, she asked if she could help them. The first man, however, cupped his hand over his mouth and demanded, "Where's the money? Where's the money, bitch?" She then noticed he was holding a short, snub-nosed revolver in his right hand.
Ms. Farrington replied the money was in the cash register; the assailant told her to get it, and followed her around the counter. She removed the whole cash tray from the register and handed it to the assailant, who shifted the gun to his left hand, then took the tray and handed it to his companion. The companion left the store.
The assailant pointed the gun at Ms. Farrington and told her to get on the floor. She complied, but continued to watch the assailant as he backed away and rounded the counter. He again warned her to stay down; she feared he was about to shoot her. When she thought the ordeal was over, she heard three shots. Apparently the assailant fired through the window and door on his way out; the glass flew into the store around the crouching victim.
Ms. Farrington called the police; Sgt. Fields of the Springhill Police Department arrived at 12:04 a.m. After he calmed her, *1305 she described the assailant as a man in his mid-twenties, about 5'9" tall, dressed in faded black pants and a turquoise print shirt. She also described his hair cut as a flat-top that stood up some 1-1 ½" on top, with no sideburns. She described the companion as maybe 17 or 18 years old and 6' to 6'3" tall. Ms. Farrington testified that she got a look at the companion only when the assailant turned and handed him the cash tray; she has never been able to identify the companion.
Sergeant Fields searched the large field behind the store but did not recover the cash tray or other evidence. Because Ms. Farrington did not indicate that either man touched anything inside the store, the police did not try to lift fingerprints. They also did not attempt to recover shell casings or spent bullets from inside the store. Ms. Farrington testified that the robbers took $747, about half in cash and half in coupons.
Officer Null of the Springhill Police Department was later assigned to investigate the robbery. He showed Ms. Farrington several photographs but she was unable to identify anyone. She thought one of the photos resembled but was younger than the assailant.
In late August, Officer Null stopped at Gas Express while investigating an unrelated offense. He showed her the photo of a suspect in that offense, and asked if she had ever seen him in her store. She immediately replied that he was the man who had robbed her several weeks before. The photo was of the defendant, McArthur Green.
In early September Officer Null showed Ms. Farrington a six-man photo line-up which included a more recent photo of Green. She positively identified Green as her assailant. Officer Null then told her that Green was in custody. At trial, Ms. Farrington again positively identified Green as the robber.
Green's fiancée, Pamela Tolese Clayton, testified that he spent the night of July 22 with her at her mother's house in McNeil, Arkansas. She was pregnant at the time with Green's child and was scheduled for a C-section operation the following day. She testified, however, that it was postponed until the next week. She maintained, nevertheless, that Green had come home from work on Thursday evening, stayed with her until he left for work Friday morning, and did not accompany her to the doctor on Friday.
Green's barber, James Carter, testified that over the summer of 1993, he cut or "edged" Green's hair on a weekly basis and that it was never as long as one inch on the top. He stated that Green's hair in July 1993 was cut the same as it was at trial in November 1994. Ms. Clayton corroborated this.
Contrary to his counsel's advice, Green took the stand and testified that at the time of the robbery he lived in Magnolia, Arkansas, some 25-30 miles from Springhill. He admitted he sometimes went to Springhill, but insisted it was not often. He testified that he spent the night of July 22 at Ms. Clayton's house because she was pregnant and having problems. On cross examination he stated, contrary to Ms. Clayton's recollection, that he did not go to work on July 22 or 23, but corroborated that he did not accompany her to the doctor on July 23. He denied that he had ever been at Gas Express, seen Ms. Farrington or owned a gun; he specifically denied committing this robbery. He admitted a 1991 Arkansas conviction for sexual abuse of a 16-year-old.

Discussion: Sufficiency of evidence
By his first assignment Green contests the sufficiency of the evidence. He urges that the victim had only moments in which to see her assailant, thus making her identification unreliable; that Ms. Clayton's and his own testimony cast reasonable doubt on the State's theory that Green was present at the robbery; and that there was no physical evidence, such as fingerprints, taken from the scene to link Green to the crime.
The standard of appellate review for sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. *1306 2781, 2789 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied 605 So.2d 1089 (La.1992).
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the State to negate any reasonable possibility of misidentification in order to carry its burden of proof. State v. Long, 408 So.2d 1221 (La.1982); State v. Chism, 591 So.2d 383 (La.App. 2d Cir.1991). A witness's failure to identify the suspect at a pretrial lineup is not grounds to bar an in-court identification; rather, it affects the weight of the testimony. State v. Long, 408 So.2d at 1225. Evidence may be introduced to explain any discrepancy. State v. Chism, 591 So.2d at 386.
The trier of fact has great discretion in assessing the credibility of witnesses. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989), writ denied 567 So.2d 93 (La.1990). Absent internal contradictions or irreconcilable conflict with physical evidence, the testimony of an eyewitness that she observed all the elements of the offense, coupled with the identification of the defendant as the culprit, is generally sufficient to support a conviction. State v. Brown, 588 So.2d 1317 (La.App. 2d Cir.1991), writ denied 592 So.2d 1298 (La. 1992).
Green's argument contests not the fact of the offense but the identity of the offender.[1] Certain facts might have cast doubt on Ms. Farrington's identification of Green as the assailant. She had never seen him prior to the robbery; her encounter with him was brief; she did not identify him until a month and a half after the robbery. In a point vigorously disputed at trial, she described her assailant to Sgt. Fields as having a flat-top haircut some 1½ high, whereas Green and his witnesses all insisted that his hair never grew out nearly that long.
On the other hand, Ms. Farrington testified that she first saw Green when she was out by the gas pumps, and later when he entered the store demanding money; on these two occasions she got a "good look" at him. R.p. 56. Officer Null testified that she identified Green immediately and without hesitation from the photo lineup as well as from the single photo. In court, she positively identified Green as the robber, and Green's witnesses verified that he looked much the same at trial as he did in July 1993.
Faced with these facts the jury obviously took Ms. Farrington's testimony as credible and accepted her identification of Green. On the record presented, we will not disturb this credibility call. State v. Bellamy, supra; State v. Davis, 626 So.2d 800, 808 (La.App. 2d Cir.1993), writ denied 632 So.2d 762 (La. 1994). Further, once Ms. Farrington's credibility is established, the record evidence is sufficient to negate any reasonable possibility of misidentification. State v. Long, supra; State v. Ford, 26,422 (La.App. 2d Cir. 9/21/94), 643 So.2d 293.
Green also urges that his alibi evidence cast reasonable doubt on the State's case. However, even the impassive record discloses inconsistencies between his own testimony and Ms. Clayton's account of what Green did, and when he came or left the house, on the evening of the crime. Green admitted a prior felony conviction. These were reasonable grounds for the jury to reject the alibi testimony as unbelievable. State v. Holland, supra.
Finally Green cites the absence of physical evidence as a factor creating reasonable doubt of his guilt. However, Sgt. Fields explained that there was no reason to dust for fingerprints in the absence of evidence that the suspect touched anything inside the store. Moreover, the State's failure to produce the gun is not fatal to the case, as Sgt. Fields found three bullet holes in the glass next to the door and the victim testified that Green held a gun on her. State v. Rash, 444 So.2d 1204 (La.1984); State v. Culverson, 26,874 (La.App. 2d Cir. 4/5/95), 653 So.2d 1261. This assignment does not present reversible error.

*1307 Ineffective assistance of counsel

By his second assignment Green urges that his trial counsel, Robert White, was ineffective. Prior to trial Mr. White and the prosecutor, Whitley Graves, agreed to introduce in evidence only the photographic lineup and no other photographs of the defendant. This was done, Green argues, to prevent showing the jury a mug shot from the Columbia County Sheriff's Department; such a photo could have been construed as other-crime evidence. Despite this agreement, however, Mr. White questioned Officer Null about the Columbia County photograph, which was introduced as Exhibit S-2. According to Green, this opened the door for the State to adduce from Officer Null the fact that Green was under investigation for other criminal offenses. Green urges this conduct satisfies the two-pronged test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[2]
As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post conviction relief than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La.C.Cr.P. art. 930. State ex rel. Bailey v. City of W. Monroe, 418 So.2d 570 (La.1982); State v. Prestridge, 399 So.2d 564 (La.1981); State v. Seay, 521 So.2d 1206 (La.App. 2d Cir.1988). Only when the record on its face discloses sufficient evidence to decide the issue of ineffective assistance when raised by assignment of error should the issue be addressed on appeal. State v. Seiss, 428 So.2d 444 (La.1983).
This record does show that despite a pretrial agreement not to mention the single photo that Ms. Farrington saw at Gas Express, Mr. White specifically asked Officer Null about it. R.p. 86. Officer Null explained, "Magnolia [Arkansas Police Department] was looking for him and so was Columbia County Sheriff's Department." R.p. 87. Ordinarily, evidence of other crimes is inadmissible. La.C.Ev. art. 404 B; State v. Jackson, 625 So.2d 146 (La.1993). Such evidence creates the risk that the defendant may be convicted of the charged offense because the jury thinks he is a "bad person." State v. Bourque, 622 So.2d 198 (La.1993).
The record also shows, however, that one of Mr. White's defense theories was to attack Ms. Farrington's identification as unreliable; he filed a pretrial motion to suppress it. R.p. 8. The minutes recite that the court sustained the motion in part and denied it in part. R.p. 1 (10/25/93). Counsel more than likely was attempting to show that the single photo show-up was impermissibly suggestive and tainted Ms. Farrington's subsequent identification. Show-ups are generally not favored. State v. Johnson, 333 So.2d 223 (La.1976); State v. James, 592 So.2d 867 (La.App. 2d Cir.1991). The defendant may always attack the reliability of pretrial identification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
This record does not show on its face that Mr. White's reference to the single photo was substandard or incompetent. In fact, before showing S-2 to the jury, the prosecutor covered the "police blotter" portion of the photo with Mr. White's approval. The record permits an inference that S-2 was part of the overall defense strategy to assail Ms. Farrington's pretrial identification. Mr. White may also have felt that Officer Null's ambiguous references to other crimes would be harmless in light of the fact that Green would have to admit his prior felony conviction anyway. La.C.Ev. art. 609.1 B. In short, the legitimate question of trial strategy precludes us from determining, on the present record, the issue of ineffective assistance. See, e.g., State v. Berry, 430 So.2d 1005 (La.1983); State v. Seay, supra. Green's remedy, if any, is on PCR where the quality *1308 of Mr. White's performance can be fully explored.

Excessive sentence
By his third assignment Green urges the district court imposed an excessive sentence. In brief he concedes that the court properly placed him in Grid Cell 1C and imposed a sentence within the recommended range, 210 to 240 months (17½-20 years), but contends without elaboration that he should not have received the maximum sentence in that range.
Under the Felony Sentencing Guidelines in effect at the time of Green's sentencing,[3] the district court had complete discretion to impose any sentence within the statutory sentencing range for the crime of conviction, provided only that the sentence imposed was not constitutionally excessive. La.S.G. § 103 H, J; State v. Smith, 93-0402 (La. 7/5/94), 639 So.2d 237 (on rehearing). The court was required only to consider the guidelines and state for the record the considerations used and a factual basis for sentence. State v. Smith, supra. When these requirements were satisfied, the appellate court's sentence review was limited to constitutional excessiveness. Id. The instant record shows that the district court reviewed Green's PSI, noted the prior felony and carefully determined the correct grid cell.[4] The court also stated that this was a serious offense which occurred while Green was on probation for the prior felony. In short, the court considered the Guidelines and articulated a factual basis for sentence.
A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Richardson, 545 So.2d 714 (La.App. 2d Cir.1989). Armed robbery carries a sentence of not less than five nor more than 99 years at hard labor without benefit of parole, probation or suspension of sentence. La.R.S. 14:64 B. The instant sentence of 20 years does not strike us as grossly disproportionate to the offense and offender; it does not shock our sense of justice. Moreover, longer sentences have been affirmed in substantially similar cases. State v. Stroughter, 25,630 (La.App. 2d Cir. 2/24/94), 632 So.2d 923; State v. Coleman, 605 So.2d 231 (La.App. 2d Cir.1992); State v. Augustine, 555 So.2d 1331 (La.1990). This assignment lacks merit.

Conclusion
Green finally requests that this court inspect the record for error patent, a procedure we follow in all cases. La.C.Cr.P. art. 920(2); State v. Stamper, 615 So.2d 1359 (La.App.2d Cir.1993). We find nothing we consider to be error patent. The conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Armed robbery is defined as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La.R.S. 14:64.
[2] Under this test, the defendant must first show that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment; the relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as informed by prevailing professional standards demanded of attorneys in criminal cases. Second, the defendant must show that this deficient performance prejudiced his defense; this element requires a showing of a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 686-87, 104 S.Ct. at 2064.
[3] The Felony Sentencing Guidelines were repealed by La.Acts 1995, No. 942, § 3, effective August 15, 1995.
[4] Green's prior felony was an Arkansas conviction for first degree sexual abuse, a crime not included in the Seriousness Rankings (La.S.G., Table 2D). The court stated that the Arkansas crime was less like simple rape, La.R.S. 14:43 (Grid Level 2), than like sexual battery, La.R.S. 14:43.1 (Grid level 3). R.p. 172. The additional criminal history point was for the current offense committed while in custody status (probation), La.S.G. § 205 C(3)(d).