JIJONES, Judge.
Appellant Alphonse J. Hogan was charged by bill of information with six counts of armed robbery. Following three mistrials,[1] a jury convicted Mr. Hogan on all counts. Mr. Hogan was sentenced to serve fifty years at hard labor without the benefit of probation, parole or suspension of sentence, on each count, to run concurrently. The State filed a multiple bill as to the first count; however, the record does not indicate a resolution as to the multiple bill. In this appeal, Mr. Hogan challenges his convictions and original sentences. We affirm.

FACTS

On June 25,1993, Linda Selestan, manager of the McKenzie’s Bakery at 2100 St. Bernard Avenue, was robbed. Ms. Selestan testified that she first noticed the perpetrator standing near the bus stop across the street. He stood there for some time, letting three or four buses go by. Then, at 4:50 p.m., he entered the store and ordered a doughnut. As Ms. Selestan rang up the sale and opened the cash register, he brandished a gun, robbed her of $135.32 from 12the register, and fled from the store. Ms. Selestan subsequently identified the defendant, Alphonse Hogan, as the perpetrator at a photographic lineup conducted at the bakery.
On June 28, 1993, at about 7:00 p.m., the McKenzie’s was robbed again. On that date the perpetrator robbed employee Julie Brooks and customers Brenda Porter and Judy Joseph. He first pulled a gun on Ms. Porter and demanded the change from her purchase of a birthday cake and her watch. From Ms. Joseph the perpetrator took a wedding ring, a chain, a watch and 24 cents. Then the perpetrator took the money out of the cash register from Ms. Brooks. Ms. Joseph identified Alphonse Hogan as the perpetrator from a photographic lineup at the District Attorney’s Office. Ms. Brooks identified Mr. Hogan as the perpetrator from a photographic lineup conducted at the bakery.
Ms. Selestan was in the back office when the second robbery took place. She testified that she recognized the voice of the perpetrator from the second robbery as that of the man who robbed her three days earlier.
On August 7, 1993, at about 5:00 p.m., a perpetrator entered Golden Cleaners, located at 2001 St. Bernard Avenue, and claimed that he was there to pick something up. He then gave the employee, Brenda Hunter, a name she did not recognize. When she turned to look for his cleaning order, he put a gun up to her face and told her to give him the money from the register. After the perpetrator left with the money, Ms. Hunter called the police.
Meanwhile, Ms. Selestan, the manager of the nearby McKenzie’s, saw the perpetrator running from the cleaners with a gun in hand and called the cleaners to say that it was the same man who had previously robbed her at McKenzie’s.
I3MS. Hunter made a tentative identification of Mr. Hogan from a photographic lineup, but positively identified him in court. She testified that her initial identification of Mr. Hogan from the photographic lineup was only tentative because Mr. Hogan had a fresh haircut and was clean-shaven when he robbed her, unlike his appearance in the photograph. However, she testified that she recognized Mr. Hogan as the perpetrator the first time she saw him in the courtroom, before his case was called.
On August 17, 1993, at about 10:00 a.m., a perpetrator entered Katherine Liebert’s florist shop on North Rampart Street. Ms. Liebert testified that she was on the telephone when the perpetrator walked to the counter, so she asked him to please wait just one minute. First, he told her that he was in *1355 no hurry. Then, he walked to the end of the counter and then back to her with both hands on a gun. He put the gun up to her head and told her to put the phone down. Then the perpetrator told Ms. Liebert to get down on the floor, but she resisted. She testified that she thought that if she got down on the floor that he would kill her, so she thought that she had a better chance of living if she remained standing up. The perpetrator then hit her in the head several times with his gun trying to force her down to the floor. Finally, he threw her into a table. He made her remove, her jewelry, then fled with it. While Ms. Liebert was struggling with the perpetrator, she was able to activate an alarm that went off in her husband’s store next door. Several people ran out of that store to check on Ms. Liebert.
Gerald Liebert, one of the people who ran out of the shop next door, testified that he saw the perpetrator coming out of his sister-in-law’s florist shop and saw his sister-in-law come out of the shop bleeding. Mr. Liebert chased the perpetrator to his car, then reached in and tried to grab the key. The perpetrator then reached toward his side. Mr. Liebert, thinking the perpetrator |4was reaching for a gun, backed away. Later on, the police took Mr. Liebert and Ms. Liebert to Port Street, where someone fitting the perpetrator’s description was seen running into an apartment building. Both of the Lieberts identified Mr. Hogan as the perpetrator. In court, Mr. Liebert testified that the car parked in front of Mr. Hogan’s residence resembled the getaway car.
Mr. Hogan was subsequently charged in a bill of information with five counts of armed robbery. The bill was later amended to include an additional, sixth charge of armed robbery. Following several mistrials, Mr. Hogan was retried before another jury. At the retrial, the State, during opening arguments, mentioned that a search warrant had been issued to search Mr. Hogan’s residence some time after his arrest. Mr. Hogan’s counsel, in his motion for a mistrial, stated that the fact that a search warrant was issued and a search conducted, with no evidence being located, had never been revealed to her during the three years the trial had been pending. The trial court agreed that the affidavit and search warrant should have been turned over to the defense as part of discovery, but held that it was harmless error and denied the motion for mistrial.
During the course of' the trial, Officer Gregory Clay testified that he obtained and executed a search warrant on September 3, 1993, at about 6:00 p.m. Officer Clay testified that he followed through with the search warrant and search, but did not locate any property nor guns at the house.
After the conclusion of the trial, the jury convicted Mr. Hogan on all counts of the indictment.

ERRORS PATENT REVIEW

A review' of the record for errors patent indicates that there were none.

IfAPPELLATE COUNSEL’S ASSIGNMENT OF ERROR

Mr. Hogan’s counsel argues that the trial court erred by denying the Motion for a Mistrial made at the conclusion of the State’s opening statement, when the State first revealed to the defense that Mr. Hogan’s residence was searched pursuant to a search warrant, and no incriminating evidence was found. Hogan contends that the failure to disclose this information was a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).when it denied the Motion for a Mistrial made at the conclusion of the State’s opening statement. Counsel contends that the failure to disclose information concerning the prior search of Mr. Hogan’s residence and failure to find any incriminating evidence was a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
In Brady, the Court held that the due process clause of the Fourteenth Amendment requires the disclosure of evidence which is favorable to the accused when the evidence is material to guilt or punishment. “[Ejvidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability1 is a probability sufficient to undermine confidence in the outcome.” United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).
*1356 In the instant case, the record supports a finding that the State did in fact disclose evidence of the search warrant in its response to a bill of particulars filed on March 1, 1994. Thus, the State did not violate Brady. However, even if the State had not disclosed the evidence prior to trial Mr. Hogan still fails to state a Brady claim.
The prosecutor, in his opening statement, stated that the police searched Mr. Hogan’s apartment pursuant to a search warrant months after his arrest and found no incriminating evidence. Not only could the defense have used the information during the trial, but also the jury was made aware of the fruitless | fiSearch. Even assuming that the evidence in this case is exculpatory, it is nevertheless not material. Nowhere does Mr. Hogan suggest how he could have used this information differently had he been made aware of its existence at an earlier stage of the proceeding. Any failure to disclose this information did not affect the verdict.

PRO SE ASSIGNMENTS OF ERROR

In a supplemental pro se brief, Mr. Hogan argues four additional assignments of error. In the first pro se assignment of error Mr. Hogan argues that he was prejudiced by two incidents that occurred during voir dire. The first incident involves a hypothetical posed by the prosecutor designed to ascertain whether prospective jurors would have a problem convicting someone in the absence of physical evidence or completely accurate information of a perpetrator’s physical characteristics. However, Mr. Hogan fails to specify how this line of questioning prejudiced him in any way.
The second incident Mr. Hogan complains of is an incident that occurred when one of the prosecutors indicated to a particular juror, who had expressed a financial hardship with jury duty, that the defense had ‘selected’ him. After questioning both this juror and another juror whom the defense claimed had overheard the prosecutor’s remark, the trial judge excused the juror for cause.
Defense counsel later moved for mistrial; however, she then withdrew the motion once the trial judge volunteered to give the jury a detailed admonition that their selection as a juror meant that they were acceptable to the court, the defense, and the State, and that no one person made the decision placing them on the jury.
Mr. Hogan claims that this act prejudiced him and was a violation of La.C.Cr.P. arts. 770(1) and 771. La.C.Cr.P. art 770 provides in relevant part:
|7Art. 770. Prejudicial remarks; basis of mistrial
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury.
The comment made by the prosecutor did not directly or indirectly relate to race, religion, color or national origin. Consequently, a mistrial was not mandated under Article 770.
La.C.Cr.P. art. 771 provides in relevant part:
Art. 771. Admonition
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; ...
The granting of a mistrial under La.C.Cr.P. art. 771 is at the discretion of the trial judge and should be granted only where the prejudicial remarks make it impossible for the defendant to obtain a fair trial. State v. Smith, 418 So.2d 515 (La.1982). “Mistrial is a drastic remedy which is only authorized where substantial prejudice will otherwise result to the accused. The determination of *1357 whether prejudice has resulted lies within the sound discretion of the trial judge.” State v. Allen, 94-1895 (La.App. 4 Cir. 9/15/95); 661 So.2d 1078, 1085, writ denied, 95-2475 and 95-2557 (La.2/2/96); 666 So.2d 1087, (citing | sSmith). Taking all of this into consideration, the trial judge’s admonishment to the jury was sufficient to assure the defendant a fair trial.
Mr. Hogan’s second assignment of error is essentially the same assignment of error briefed by his appellate counsel, i.e. he challenges the nondisclosure of the search warrant and negative search. As stated earlier in this opinion, this assignment of error has no merit.
In his third assignment of error, Mr. Hogan claims that he was prejudiced because the District Attorney’s office obtained false witness identifications and provided suggestive identifications to witnesses. In order to suppress the identification, Mr. Hogan must show that the identifications were suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Lowenfield, 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986). When there is a suggestive identification procedure, courts must look to several factors to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of irreparable misidentification. Manson v. Brathwaite, 482 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). These factors include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’ degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. State v. Martin, 595 So.2d 592 (La.1992). Assuming all the identification procedures were suggestive, the application of the Manson factors leads to the conclusion that there was no substantial likelihood of irreparable misiden-tification. Out of the seven identifications made by witnesses, only two raise any questions of suggestiveness at all (the identifications made by Ms. Hunter and Ms. Porter). Ms. Hunter made a tentative identification from the photographic lineup and then made a positive identification in court, before Mr. |9Hogan’s case was even called. Ms. Hunter had the opportunity to view Mr. Hogan at the time of the crime, was very attentive, had given an accurate description of Mr. Hogan, and was ninety percent certain that the man from the photographic lineup was the perpetrator. She later positively identified him in court. In State v. Green, 27,652 (La.App. 2 Cir. 1/24/96); 666 So.2d 1302, the court held that the witness’ failure to identify the suspect at a pretrial lineup was not grounds to bar the witness’ in-court identification. Rather, it affected the weight of the testimony. In the instant case, the prosecution presented evidence to explain the discrepancy between Ms. Hunter’s original tentative identification and her subsequent positive identification. Therefore, with respect to Ms. Hunter’s identification there is no likelihood of irreparable misidentification. Ms. Porter’s in-court identification would also fall under this standard. The fact that she was unable to identify Mr. Hogan at first, but was able to identify him in court a year and a half after the robbery should be considered in the weight of her testimony. Therefore, even assuming the suggestiveness requirement, there is no substantial likelihood of irreparable misidentification.
In his fourth assignment of error, Mr. Hogan claims that the trial court denied him the right to effective counsel. Mr. Hogan argues that his counsel tried to be effective, but was continually overruled, thus limiting her effectiveness. However, effective counsel has been defined to mean “not error-less counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render effective assistance.” State v. Ratcliff, 416 So.2d 528, 531 (La.1982). Clearly, Mr. Hogan does not complain of his counsel’s assistance, but the judge’s rulings. Therefore, this assignment of error has no merit. Mr. Hogan’s convictions and sentences are affirmed.

AFFIRMED.

. The mistrials were granted upon motions of Mr. Hogan’s counsel after each trial had begun. but prior to submission of the case to a jury.